**William R. HINDMAN, Appellant,**

v.

**Donald W. WYRICK, Appellee.**

**No. 82–1341.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1983.

Decided March 16, 1983.

---

1. The Honorable James H. Meredith, United States Senior District Judge for the Eastern District of Missouri.

Al Moskowitz, Asst. Federal Public Defender, W.D. Missouri, Kansas City, Mo., for appellant.

John Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before HEANEY, ROSS, and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Petitioner William R. Hindman appeals from the District Court's [1] order denying his petition for habeas corpus. His only contention on appeal is that he did not have the effective assistance of counsel in Missouri criminal proceedings, and that the District Court erred in its conclusion to the contrary. We affirm.

### I.

The petitioner was tried and convicted on August 10, 1974, before a jury in the Circuit Court of Webster County, Missouri. The charge was assault with intent to kill with malice aforethought in violation of Mo.Rev. Stat. § 559.180 (1969). He received a sentence of twenty-five years. Hindman's conviction was affirmed on appeal, *State v. Hindman,* 543 S.W.2d 278 (Mo.App.1976), and his subsequent state-court request for post-conviction relief was denied following a hearing. This decision was also affirmed on appeal. *Hindman v. State,* 597 S.W.2d 264 (Mo.App.1980).[2]

Hindman filed a *pro se* petition for habeas corpus in the District Court on February 18, 1982. That court appointed the Federal Public Defender to represent the petitioner and directed that an amended and substituted petition be filed raising only those grounds for relief which were not patently frivolous. Hindman's amended petition alleged three grounds for habeas relief: 1) that petitioner was deprived of his right to a speedy trial; 2) that petitioner was denied the right to assistance of counsel; and 3) that petitioner was denied effective assistance of counsel. The court declined to hold an evidentiary hearing on the petition and, on February 11, 1982, filed a Memorandum and Order denying the petition as to all three grounds. On appeal Hindman pursues only his third ground, that he was denied effective assistance of counsel.

A brief review of the circumstances underlying Hindman's conviction is in order. The charge against the petitioner was based on an incident which occurred in Hartsville, Missouri, between midnight and one o'clock on October 26 and 27, 1973. The District Court's account of the facts is as follows:

> [P]etitioner appeared at the door of one Carroll Renfro [between midnight and 1:00 a.m.] with a rifle in hand and forced Renfro to drive him to the courthouse in Hartsville, Missouri. Enroute, petitioner told Renfro, "They [sic] is a lying, thieving, son-of-a-bitch down there I have got to kill." Petitioner instructed Renfro to "Pull up behind the Courthouse," "Park there beside where the Sheriff is at," and "Get out and go down to the door and see if anybody is here." After Renfro "rat-

---

1. The Hon. John W. Oliver, Senior United States District Judge for the Western District of Missouri.

2. The relevant procedural history of this case, including Hindman's application to the state court for a writ of error *coram nobis* during the pendency of his direct appeal, is set forth in Judge Oliver's unpublished Memorandum and Order, *Hindman v. Wyrick,* 531 F.Supp. 1103 (W.D.Mo.1982). The Missouri Supreme Court affirmed the denial of the coram nobis petition. *Hindman v. Crouch,* 560 S.W.2d 874 (Mo.1978) (en banc).

tled the door" and got no response, petitioner said "Well, wait just a minute, and there will be someone here."

Police Officer Robert Dugger, responding to a tip received from two boys riding in an automobile, proceeded to the scene at the courthouse. Officer Dugger stopped near Renfro's truck; petitioner "whirled [the gun] right toward the windshield of the [police] car, right directly at me, aiming right in the chest." Officer Dugger then removed to the nearby post office and radioed for help. Petitioner told Renfro "to get out and go on home . . . There's going to be a shooting here in just a minute." As Renfro left, Officer Dugger pulled out from behind the post office in an attempt to follow Renfro's truck. Several shots rang out; Officer Dugger was hit in the arm and hip.

Soon after, Sheriff Kelly arrived on the scene. He was told where he could find petitioner and that petitioner wanted to surrender his weapon. He and a deputy proceeded to a motor company's lot where they found petitioner "hunkered down . . . between the building and a car" with a rifle in his hand. Petitioner told Sheriff Kelly "Come over here and I will give you this gun." He handed him the rifle and said, "I think I shot that there officer's arm off, didn't I?"

As Sheriff Kelly and petitioner walked back to the courthouse, petitioner told the Sheriff "that he had a bad heart condition, and that he didn't have long to live, and he said, 'I am going to get rid of some of these sons-of-bitches.'" At the courthouse petitioner inquired "Who was that officer that I shot his arm off?" and was told "That is the City Police, Bob Dugger." To this defendant responded, "I don't know Bob Dugger."

Designated Record (D.R.) 194–95.

## II.

The petitioner now alleges as his sole ground for federal habeas relief that he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments. The supposed factual basis for this claim is that his trial counsel failed to interview or call as a witness Dr. James Griffin, a physician who treated Officer Dugger for the gunshot injuries on the morning of October 27, 1973. Hindman argues this was a constitutionally fatal omission by trial counsel because Dr. Griffin later stated in a deposition in a related civil matter[3] that Officer Dugger's wounds appeared to have been caused by a small caliber weapon, either a .22 or a .38. Hindman's gun, on the other hand, was a 30.06 rifle, the same caliber as several spent shell casings found in the courtyard after his arrest. There was, incidentally, testimony from a ballistics expert that these casings were fired from Hindman's gun. The petitioner argues that the testimony of Dr. Griffin would have been crucial support for his defense in that, at trial, he denied having shot the officer and said he heard shots being fired by another gunman whose location he could not discern.[4]

Before reaching the merits of the petitioner's claim, we must first address the issue raised by the trial court's finding that "the failure to discover [Dr. Griffin's] testimony before trial was not cited as constituting ineffective assistance of counsel in any State court proceeding." D.R. 203. At our request counsel filed supplemental briefs addressing whether this issue could be raised now in a second state-court post-conviction proceeding under Missouri Sup.Ct. Rule 27.26, and also whether this state of affairs requires dismissal of the petition under the rule of *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

■ We conclude that *Rose v. Lundy* is not applicable here. The petition at this point presents but one claim. The petition

---

**3.** This related civil matter is referred to in the District Court's opinion as *"Dugger v. Hindman,* No. 9755." We assume this case was a tort suit by the officer against his alleged assailant, the petitioner.

**4.** Hindman further said he thought perhaps someone was shooting at him and that he fired his gun once in response.

is not *mixed,* as referred to in *Rose v. Lundy.* The real question is whether the single claim now presented has been exhausted or not. In his Rule 27.26 proceeding, petitioner did raise ineffectiveness of counsel among the thirty-seven grounds he urged for vacating his conviction. *Hindman v. State, supra,* 597 S.W.2d at 271.[5] Yet he did not cite counsel's failure to interview or call Dr. Griffin as supporting his claim of ineffectiveness. Instead, he pointed to counsel's failure to invoke the rule on exclusion of witnesses, his failure to object to the testimony of Renfro on the ground that the defendant was in a drugged state of mind when he spoke to Renfro, his failure to object to certain expert testimony, and the fact that his trial lasted only two days when, he says, it should have taken longer. Hindman concedes, however, that he was aware of the substance of Dr. Griffin's deposition testimony at the time of his Rule 27.26 hearing. See Appellant's Supplemental Brief at 14. The Rule 27.26 proceeding occurred approximately a year and a half after Dr. Griffin's deposition in the civil case. At that proceeding petitioner's then counsel asked his trial counsel why he had not called Dr. Griffin as a witness at trial. *Id.* at 13. Yet, in the same breath, Hindman asserts the issue "was never raised in the state courts." We emphatically reject this assertion. On the contrary, it is clear that the competency of Hindman's trial counsel was fully litigated in the state courts, and that the specific instance of Dr. Griffin's testimony was brought out at the hearing. That the state courts did not make findings of fact and conclusions of law on this particular incident is not controlling. Those courts heard the evidence on Mr. Hindman's claim that his trial counsel was ineffective, and they found against him on this claim. Under these circumstances, we have no doubt that ineffectiveness of trial counsel, as a ground of federal habeas relief, has been exhausted in state court for purposes of 28 U.S.C. § 2254(b).[6]

The assertion that Hindman's claim is not exhausted, as the respondent argues, and should therefore be dismissed, simply misapprehends the meaning of the phrase "ground of relief" as it has been used in both habeas cases and in Rule 9(b) of the Rules Governing § 2254 Cases. In *Sanders v. United States,* 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963), the Court said:

> (1) By "ground," we mean simply a sufficient legal basis for granting the relief sought by the applicant. For example, the contention that an involuntary confession was admitted in evidence against him is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different "ground" than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments .... [citations omitted].

Mr. Hindman alleged in his Rule 27.26 proceeding that his trial counsel was constitutionally ineffective. The state courts heard evidence on this issue and found against him. Now he wants to make what he says is another argument in support of this claim. It would defy common sense and the considerations of judicial economy emphasized in *Rose v. Lundy, supra,* 102 S.Ct. at 1204, to hold that Hindman must return to state court, and then come back to federal district court, every time he thinks of a new piece of evidence which could have been produced.

■ Having concluded that the issue of ineffectiveness of trial counsel was exhaust-

---

5. The Missouri Court of Appeals notes that Mr. Hindman filed a 141-page brief in support of his appeal from the denial of his post-conviction petition. 597 S.W.2d at 266.

6. The finding that the claim is exhausted for federal habeas purposes does not, of course, mean the Missouri state courts could not entertain a second Rule 27.26 proceeding addressing the issue here presented. Whether they would review the issue again on this supposed new factual ground is obviously a question for the state courts on which we intimate no view.

ed in the state courts, we are now permitted to address the merits of petitioner's argument.[7] To prevail on this claim petitioner must show his trial counsel failed to exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances. *Morrow v. Parratt,* 574 F.2d 411, 412 (8th Cir.1978). In addition, he must show his case was prejudiced by this failure. *Id.* at 413.

 We are inclined to agree with the District Court's conclusion that the petitioner has not shown a breach of counsel's duty of representation of sufficient magnitude to vitiate his conviction. As Judge Oliver points out, "There was simply no reason before trial for petitioner's counsel to believe that Dr. Griffin's testimony, first obtained in relation to another case more than one year after petitioner's trial, would prove helpful to petitioner." D.R. 203. As the ground of decision in this case, however, we conclude that a holding on the question of what counsel should have done is unnecessary because petitioner was undoubtedly not prejudiced by the failure to call Dr. Griffin. The evidence against the petitioner was overwhelming. In addition to his own incriminating statements to his arresting officers, there was the testimony of the abducted Carroll Renfro referred to earlier, of Officer Dugger that Hindman pointed the gun directly at the windshield of his car, and of two ballistics experts who concluded the three shell casings from the courtyard had been fired from Hindman's rifle. Additionally, Dr. Griffin's deposition testimony was equivocal. He made only an "estimate" as to the caliber of the bullet based on the size of the wound and he admitted the wound could have been caused by a fragment rather than an entire bullet. We conclude, therefore, that under the circumstances of this case the omission of Dr. Griffin's testimony was harmless beyond a reasonable doubt. See *Reynolds v. Mabry,* 574 F.2d 978, 980 (8th Cir.1978). The judgment is affirmed.

---

7. There is another doctrine that could bar our consideration of Hindman's claim—the doctrine of waiver or forfeiture. That is, if he did not urge in the state courts that counsel was ineffective in failing to call Dr. Griffin, and if there is no good reason for his having failed to make that argument in the state courts, and if the state courts would treat that failure as a procedural default barring consideration by them of the merits of the argument, then under some circumstances federal habeas is barred, a la *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Exhaustion, by contrast, merely postpones federal habeas review. It does not bar it altogether. The distinction has recently been explained by Judge Posner in *Carbajol v. Fairman,* 700 F.2d 397, p. 399 (7th Cir.1983). We need not pursue this avenue of analysis here. The lack of merit of Hindman's claim as a substantive matter is clear and can be addressed in brief compass, thus leading us to the same result as if we held that his claim was waived or forfeited.