Roy WILSON, Petitioner-Appellant,

v.

Barry MINTZES, Respondent-Appellee.

No. 83–1046.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 18, 1984.

Decided May 4, 1984.

Rehearing and Rehearing En Banc
Denied June 22, 1984.

John R. Minock, argued, Detroit, Mich.,
Court Appointed, for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Mich., J.
Peter Lark, Asst. Atty. Gen., argued, Lansing, Mich., for respondent-appellee.

Before ENGEL, MARTIN and CONTIE,
Circuit Judges.

CONTIE, Circuit Judge.

Petitioner Roy Wilson, a prisoner at the State Prison of Southern Michigan at Jackson, appeals from the district court's dismissal of his petition for a writ of habeas corpus. 28 U.S.C. § 2254. The issue presented is whether the petitioner was deprived of effective assistance of counsel when the trial judge denied petitioner's repeated requests for substitute counsel. We conclude that, on the facts of this case, the trial court should have allowed petitioner to retain new counsel and thus we reverse the district court.

The petitioner had been previously convicted by a jury of carnal knowledge of a female over 16, M.C.L.A. 750.520, in February 1974. The Michigan Supreme Court, however, reversed this conviction on the grounds that the petitioner should have been given a reasonable continuance following the prosecution's late endorsement of two expert witnesses. *People v. Wilson*, 397 Mich. 76, 83, 243 N.W.2d 257 (1976). Prior to the second trial, petitioner filed a motion to disqualify the original trial judge from rehearing the case. This motion was denied by an alternate judge.

On the second day of the second trial, the record indicates that a serious verbal altercation took place between the trial judge and defendant's retained counsel shortly after defense counsel began his cross-examination of Sgt. Audrey Martini, the officer in charge of the investigation. Defense counsel began his cross-examination by asking the officer for a copy of the search warrant which the officer had used to seize certain pieces of incriminating evidence. The officer replied that the warrant was in the court's file. After a brief exchange between the trial judge and defense counsel, the judge excused the jury and then asked defense counsel when he "last looked at the Court file for this case." Defense counsel replied that he had never looked at the actual court file, but that he had made an extensive review of his office file for the case. At that point, the trial judge expressed his concern over defense counsel's lack of preparation and asked petitioner if he wished to discharge his lawyer "as being incompetent". When petitioner answered that he did not wish to continue with his attorney, the trial judge asked petitioner to state his reasons for wanting substitute counsel. Petitioner replied that he wanted new counsel because his attorney "hasn't prepared for the case." The trial judge did not rule on petitioner's request, but rather denied defense counsel's subsequent request to leave the courtroom in order to make a phone call. In response, defense counsel became very agitated and repeatedly expressed his belief that he would be arrested if he left the courtroom.[1]

1. The text of this exchange is reproduced in pertinent part below:

THE COURT: You wish to discharge your lawyer as being incompetent?
DEFENDANT WILSON: You asked me did I wish to continue with this attorney and I said no.
THE COURT: Why? State your reasons on the record. He had not prepared the case well?
DEFENDANT WILSON: No he hasn't prepared the case—prepared for the case.
THE COURT: He what?
DEFENDANT WILSON: He hasn't prepared for the case.
THE COURT: Do you have money to hire another lawyer? We have a question of incompetency of Counsel—
DEFENDANT WILSON: I My family may—
THE COURT: Is your family here?
DEFENDANT WILSON: Yes.
THE COURT: Mr. Patterson, don't call out.

MR. PATTERSON: You're telling me I can't use the phone?
THE COURT: I'm telling you that during the trial, you can't use the phone in the course of a trial. Mr. Patterson, do not leave the area of the courtroom.
Now Mr. Wilson, are you prepared to discharge your lawyer? I have a problem. I have been reversed three times for incompetence of Counsel. I don't know how to solve the question. Each one has to be handled on its own merits. I find here a lawyer who is trying his third or fourth capital case, two years of experience; never bothered to check the court file; didn't start his preparation until yesterday when he asked the Prosecutor for a search warrant.
We have a firm that's been on this case for over a year as I recall—
MR. PATTERSON: I should state for the record that the firm of Stone, Richardson, Greer and Allen represents this man and if he discharges me personally, fine. I should also

After denying defense counsel's request for a mistrial, the trial judge brought the jury back into the courtroom and instructed the prosecutor to continue the trial. Defense counsel, however, continued to state that he was under arrest and that the jury

state for the record that the Court has made statements to this man that he has answered yes or no to and I don't care what the Court happens to believe, Mr. Wilson—and I don't know what the motive for the Court is. The fact that this Court has been reversed before is not my problem but as far as I'm concerned, I have properly prepared for this case and unless I'm a criminal defendant myself all of a sudden, I don't understand what the problem is.

THE COURT: Well at least on three occasions the Supreme Court has said, "Judge Gillis, you should not have let that trial go on with incompetent Counsel. This man was not properly represented".

Now, I'm asking Mr. Wilson—

MR. PATTERSON: That's your opinion.

THE COURT: I am saying, the record discloses for one that you've never looked at the court file.

MR. PATTERSON: Nor any other court file.

THE COURT: Two, you've had only two years of experience and this is your third or fourth capital trial. You didn't ask the Prosecutor for the search warrant until yesterday after the trial was in progress or the day of the trial.

MR. PATTERSON: I would like the record to reflect that our office has had this case for at least two years that I know of before I was ever there. And that all of this has been discussed and the opinions and the research done by our office by two different attorneys other than myself and that I have read our file and that Counsel did not feel it was necessary to go up and look at the court file.

THE COURT: Mr. Wilson, he's the boss. Do you wish to continue this trial with this law firm?

MR. PATTERSON: I don't think the question is the law firm; I think the question is this lawyer?·

THE COURT: And this lawyer in particular?

MR. PATTERSON: Not 'and this lawyer'; this lawyer period. That's the question.

THE COURT: All right; that's the question Mr. Wilson.

MR. WILSON: Can I confer with my family?

THE COURT: Yes, you can talk to your family.

MR. PATTERSON: Can I go make a telephone call?

THE COURT: No, you will not. What do you have to make a phone call about? You're committed to this trial—

should be so informed. Defense counsel also refused to cross-examine Sgt. Martini and indicated that (1) he refused to continue the trial and (2) he was no longer petitioner's attorney. At that point, court was adjourned for the day.[2]

MR. PATTERSON: Since all of a sudden I'm a defendant, if I make a move these Police Officers are going to arrest me and you can hold me for contempt and put me in the Wayne County Jail.

THE COURT: That is not so—

MR. PATTERSON: If I walk out this door, the Court is not going to put me in jail or fine me because if you tell me yes, I'm going out that door.

THE COURT: I am saying the Court has ordered you—

MR. PATTERSON: Am I under arrest? Am I under Arrest?

THE COURT: I said do not leave this courtroom.

Mr. Wilson, you can talk to your family.

MR. PATTERSON: Don't answer another question.

I don't believe that you can hold me in this courtroom against my will, not and conduct this kind of proceeding and damn it if I don't move for a mistrial on the basis of the statements made here in front of me, my client, the Prosecutor, the Judge and the jury.

THE COURT: Nothing has been said in front of the jury about this.

MR. PATTERSON: This is the most illegal I have ever seen in my life; your holding me here against my will. You're telling me I can't walk out that door and I'm under Court order to stay here. That's just what you just said, right? And you can enforce your orders by criminal contempt proceedings. And if I walk out that door one of these Officers can arrest me and shoot me if he wants to.

THE COURT: Do you want to continue the trial Mr. Wilson?

MR. PATTERSON: I don't; I move for a mistrial.

THE COURT: The motion is denied.

**2.** The text of this exchange reads as follows:

THE COURT: Bring out the jury; we'll continue the trial.

MR. PATTERSON: We're not going to continue the trial.

THE COURT: Bring out the jury. Sit down Mr. Patterson.

MR. PATTERSON: I want the record to show that I'm being detained in this courtroom.

(Jury returned to courtroom)

MR. PATTERSON: They have a right to know.

THE COURT: You may continue Mr. LaBret; as soon as the jury is seated.

The following day, prior to the jury's admission to the courtroom, the petitioner expressed his belief that he could not get a fair trial due to the previous day's altercation. The trial judge replied that the jury "was not here when that took place," and further stated that "[i]f [defense counsel] had properly prepared and read the court file, he would not have asked [certain questions]." This statement triggered a new exchange between the trial judge and defense counsel regarding defense counsel's preparation for the case. Following this exchange, petitioner again indicated that he was not satisfied with his attorney due to "the events that took place yesterday." The court again stated that the incident took place outside the presence of the jury and the trial proceeded. Petitioner was later found guilty of rape and received a life sentence. The Michigan Court of Appeals affirmed his conviction and the Michigan Supreme Court denied petitioner's application for leave to appeal. Petitioner then filed a petition for a writ of habeas corpus, which the district court denied in June 1981. Petitioner appeals.

 Although an essential element of a criminal defendant's sixth amendment right to effective assistance of counsel is the right to retain an attorney of the defendant's choice, *Linton v. Perini*, 656 F.2d 207, 208–09 (6th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982); *United States v. Burton*, 584 F.2d 485, 488–89 (D.C.Cir.1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979), this right is not absolute. "The right 'cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same'." *United States v. Burton*, 584 F.2d at 489. Accordingly, "[i]n order to warrant a substitution of counsel during trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir.1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973). *See United States v. Welty*, 674 F.2d 185, 188 (3rd Cir.1982); *Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir.1976); *United States v. Young*, 482 F.2d 993, 995 (5th Cir.1973). The petitioner must also demonstrate that he was prejudiced by his attor-

MR. PATTERSON: Tell them I am under arrest. Tell them I am under arrest and I can't leave this courtroom. Tell the jury that because they have a right to know.

THE COURT: Mr. Patterson is not under arrest; he's not under any sanctions of the Court.

MR. PATTERSON: Am I ordered to stay here in this courtroom?

THE COURT: You are the attorney of record. Continue the trial Mr. LaBret.

MR. PATTERSON: I refuse—I'm telling the jury right now, I refuse to conduct this case in this courtroom after what has been said by the Court to my client while the jury was in the jury box.

THE COURT: Continue the trial, Mr. Patterson.

MR. PATTERSON: I am making no further objections; I remove myself from the case. I remove myself from the case.

THE COURT: Mr. Patterson—

MR. PATTERSON: He doesn't have an attorney.

THE COURT: Mr. Patterson, have a seat.

MR. LA BRET: Your Honor, I've turned the witness over to Mr. Patterson.

THE COURT: Mr. Patterson, do you have any questions of this witness?

MR. PATTERSON: I am no longer this man's attorney. If the Court is going to conduct a trial in this fashion, I am no longer the attorney.

THE COURT: Do you have any questions of this witness?

MR. PATTERSON: Mr. Jamison, Mr. Allen, you can arrest me if he tells you to arrest me. If I walk out this door. I know damn well I can be arrested when I walk out that door.

THE COURT: Are you going to continue the trial?

MR. PATTERSON: No.

THE COURT: Do you have any questions of this witness?

MR. PATTERSON: I move for a mistrial.

THE COURT: Motion denied.

Call the next witness.

MR. LA BRET: I believe that concludes our witnesses, your Honor, for today. We have two or three witnesses who will conclude our portion of the trial.

THE COURT: Ladies and gentlemen of the jury. Return to this courtroom at 9:00 o'clock and we'll continue the trial tomorrow.

ney's performance. *Hindman v. Wyrick*, 702 F.2d 148, 152 (8th Cir.1983); *Owens v. Wainwright*, 698 F.2d 1111, 1113 (11th Cir.), *cert. denied*, ⸺ U.S. ⸺, 104 S.Ct. 117, 78 L.Ed.2d 116 (1983); *United States v. Sullivan*, 694 F.2d 1348, 1349 (2d Cir. 1982); *United States v. Baynes*, 687 F.2d 659, 670 (3rd Cir.1982). Finally, it is well settled that when a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. *See Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir.1982), *cert. denied*, ⸺ U.S. ⸺, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *United States v. Hart*, 557 F.2d 162, 163 (8th Cir.), *cert. denied*, 434 U.S. 906, 98 S.Ct. 305, 54 L.Ed.2d 193 (1977); *United States v. Young*, 482 F.2d at 995; *Sawicki v. Johnson*, 475 F.2d 183, 184 (6th Cir.1973). Such an inquiry is necessary if the court is to determine whether good cause for substitution of counsel exists. *United States v. Welty*, 674 F.2d at 188.

When petitioner enunciated his reasons for his dissatisfaction with counsel, the record indicates that the trial judge was already engaged in an ongoing verbal altercation with defense counsel and thus the court made only a perfunctory, surface inquiry to determine the truth and scope of petitioner's allegations. While the trial court's failure to make a thorough inquiry is not in and of itself a sixth amendment violation, we hold that petitioner did in fact have good cause to request new counsel and that the trial court's denial of petitioner's request deprived petitioner of his sixth amendment right to effective assistance of counsel.

We note at the outset that the state appellate court's ultimate finding that petitioner had effective counsel is not entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d). *Adams v. Jago*, 703 F.2d 978, 980 (6th Cir.1983). Such a conclusion is legal in nature and is freely reviewable by this court.[3] *Id.* We also note that while petitioner's request for new counsel came during the trial, there is no evidence that petitioner's request was contrived for purposes of delay. *See United States v. Welty*, 674 F.2d at 190. During the verbal altercation between the trial judge and defense counsel, the record indicates that defense counsel became extremely agitated at the trial judge's comments and essentially sought to protect himself rather than the interests of his client. Although most of the altercation took place outside the presence of the jury, the jury was present when defense counsel stated that (1) he refused to make any further objections, (2) he refused to continue the trial, and (3) he was no longer petitioner's attorney. Although we agree with the state court of appeals that the conduct of the trial judge was, at times, abrasive, we nevertheless hold that defense counsel's attempt to remove himself from the case in front of the jury was inexcusable and prejudicial. Defense counsel also chose to continue his heated exchange with the trial judge rather than cross-examine the police officer in charge of the investigation. That defense counsel failed to cross-examine a key government witness is further evidence that he was, at that time, unwilling or unable to protect the interests of his client. In short, we hold that this conduct, along with petitioner's unheeded statements of dissatisfaction with his counsel, evidence an irreconcilable conflict between the interests of defense counsel and petitioner which prejudiced petitioner's case and thus deprived petitioner of his sixth

---

**3.** We recognize, of course, that the findings of fact which underlie the ultimate question of whether petitioner received effective assistance of counsel are entitled to a presumption of correctness under § 2254(d). *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982) (Sumner II); *Adams v. Jago*, 703 F.2d at 980. We reiterate, however, that the ultimate conclusion to be drawn from such findings regarding the effectiveness of counsel's assistance is legal in nature and thus not subject to the statutory presumption set forth in § 2254(d). *Adams v. Jago*, 703 F.2d at 980.

amendment right to effective assistance of counsel. In light of our holding on petitioner's effective assistance of counsel claim, we do not address petitioner's claim that he was denied a fair trial due to bias on the part of the trial judge.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED to the district court with instructions to grant the writ of habeas corpus.