755 F.2d 933
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
ERNEST VICKERS, JR., DEFENDANT-APPELLANT,
CHARLES W. LIGON, DEFENDANT-APPELLANT.
 NOS. 83-5833, 83-5948
 United States Court of Appeals, Sixth Circuit.
 1/2/85
 
 BEFORE: KEITH, KENNEDY and JONES, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants, Ernest Vickers, Jr., and Charles Ligon, were convicted by jury of misapplying the funds of the Carroll County Bank in Huntingdon, Tennessee (Bank); making false statements in connection with the Bank's loans; making false entires in the Bank's records and aiding and abetting in violation of 18 U.S.C. Secs. 656, 1014, 1005, 2. Appellants raise several issues in this consolidated appeal. We affirm for the following reasons.
 
 
 2
 At the time of the alleged violations, Ernest Vickers owned at least 80% of the Bank's stock and Charles Ligon served as its president and chief executive officer. Due to Vickers' controlling ownership, federal banking regulations limited the amount of money he could borrow from the Bank. By 1978, Vickers had borrowed in excess of the limit. The government contended at trial that in order to circumvent this borrowing limitation and the limitations imposed by Bank policy, Vickers induced third parties to obtain Bank loans in their names and forward the loan proceeds to him. Ligon and Bank vice president J. Paul Moore approved the loans at Vickers' behest. Testimony adduced at trial established that in the typical transaction, Vickers assured the nominal borrower that Vickers would repay the loan. Evidence also showed that for some of the loans in question, Ligon and Moore invented nonexistent security, created false financial statements and approved greater sums than permitted by Bank policies.
 
 
 3
 In another violation of Bank policy, Vickers deposited and drew on several worthless checks. These transactions created an overdraft of $250,000 despite Bank policy which limited overdrafts to $1,000. Vickers received immediate credit for these checks. Testimony at trial indicated Ligon could have refused to honor Vickers' checks, but did not.
 
 
 4
 A week before trial was scheduled to begin, Vickers moved for substitution of retained counsel and additional time to prepare for trial. The court denied the motions noting that the trial had been continued several times before and that the attorney whom Vickers retained to replace appointed counsel was too inexperienced to prepare the case without additional time. On appeal, Vickers assigns two reversible errors. He first argues that his sixth amendment right to counsel of choice was abrogated when the district court refused to grant his motion to substitute retained for appointed counsel. His second contention challenges a jury instruction. We do not agree with either of appellant's contentions.
 
 
 5
 The right to counsel of choice, albeit an essential element of the sixth amendment right to effective assistance of counsel, is not absolute. Wilson v. Mintzes, 733 F.2d 424, 427 (6th Cir. 1984) vacated and remanded on other grounds, 53 U.S.L.W. 3323 (U.S. Oct. 30, 1984); Linton v. Perini, 656 F.2d 207, 209 (6th Cir. 1981), cert. denied, 454 U.S. 1162 (1982) (quoting United States v. Burton, 584 F.2d 485, 488-89 (D.C. Cir. 1978), cert. denied, 439 U.S. 1069 (1979)). When a defendant's pursuit of the right to retain counsel of choice is found to cause unreasonable delay, difficulties for the trial court and prejudice to the prosecution or codefendants, a trial judge may require the trial to proceed despite a defendant's resulting inability to retain counsel of his choice. Linton v. Perini, 656 F.2d at 209.
 
 
 6
 Vickers submitted his motion to substitute counsel after indicating to the court that new counsel would need additional time to prepare. Vickers reiterated new counsel's request for preparation time in the motion for a continuance filed shortly thereafter. In denying both motions it is clear the court balanced Vickers' sixth amendment right to retain counsel of choice against the demands of the Speedy Trial Act and the public's interest in the prompt and efficient administration of justice. The court found that the case had been postponed several times, Vickers had caused delays in the trials of two codefendants, and new counsel had insufficient experience to proceed without the requested preparation time. The district judge also noted that the division docket was 'unbelievably crowded' and commented that he suspected Vickers of deliberately trying to postpone the trial. On this record, we find no abuse of discretion in the denial of both motions.
 
 
 7
 Vickers next contends that the district court instruction on the first statutory element of 18 U.S.C. Sec. 656, being 'connected in any capacity' with the Bank, impermissibly invaded the province of the jury. The instruction, he argues, mandated the jury to conclude Vickers was connected with the Bank in his capacity as major stockholder. He also argues that the instruction precluded the jury from considering Vickers solely as an aider and abetter. We do not agree.
 
 
 8
 In pertinent part, 18 U.S.C. Sec. 656 reads:
 
 
 9
 Whoever, being an officer, director, agent or employee of, or connected in any capacity with any . . . insured bank . . . willfully misapplies any of the moneys . . . instrusted to the custody or care of such bank, or to the custody of care of any such agent, officer, director, employee or receiver, shall be fined . . . or imprisoned . . .
 
 
 10
 The court instructed the jury in pertinent part that:
 
 
 11
 Three essential elements are required to be proved beyond a reasonable doubt in order to establish the defense under Section 656 as charged in these counts of the indictment.
 
 
 12
 The first essential element is that the defendant being considered, that is, Vickers or Ligon, was an officer or connected in any capacity with the bank, namely the major stockholder, and the bank the Carroll County Bank which was insured by the Federal Deposit Insurance Corporation.
 
 
 13
 Considered as a whole, the instruction does not mislead the jury or preclude its factual determination of whether Vickers was 'connected in any capacity' with the Bank. The instruction directs the jury to determine whether the government proved beyond a reasonable doubt that Vickers was connected with the Bank; and that if the proof established Vickers as a major stockholder, they could find he was connected under 18 U.S.C. Sec. 656. The instruction is not contrary to the law.
 
 
 14
 In Garrett v. United States, 396 F.2d 489, 491 (5th Cir.), cert. denied, 393 U.S. 952 (1968), a nonemployee shareholder who owned a controlling interest in the bank, named associates and employees to its board of directors and took an active part in bank affairs was found to be 'connected' under Section 656. The record in this case establishes that Vickers owned 80% of the Bank's stock, hired Ligon as its chief executive officer, appointed a board member and took a highly active part in Bank affairs. Thus, under Garrett, the court's instruction does not constitute reversible error. Nor was jury consideration of Vickers' status as an aider and abettor precluded by the court's instructions; the court expressly provided for determination of Vickers' role as aider and abetter in a later instruction.
 
 
 15
 Appellant Ligon raises four issues. Ligon first assigns error to the court's refusal to impanel a new jury after codefendant Sammie Lee Hutch changed his plea to guilty. The resulting prejudice, Ligon argues, was unremediable and necessarily precluded the jury from impartially considering his guilt or innocence. After the plea was entered, the trial court instructed the jurors not to consider Hutch's guilty plea in their determination of codefendants' liability. The court then questioned the jurors to determine whether their impartiality had been impaired. Appellant did not object to the court's cautionary instruction or move for a mistrial at that time. After careful review of the record, we conclude the court did not abuse its discretion in determining the prejudicial impact of Hutch's plea on the impartiality of the jurors. See United States v. Jones, 696 F.2d 479, 492 (6th Cir.), cert. denied, 103 S.Ct. 2453 (1982); Ashton v. Warden, Powhaten Correctional Center, 574 F.2d 1169, 1172 (4th Cir. 1978); United States v. Smith, 393 F.2d 687, 689 (6th Cir.), cert. denied, 393 U.S. 885 (1968).
 
 
 16
 Ligon next argues that insufficient evidence supports his conviction for misapplying Bank funds under 18 U.S.C. Sec. 656, and that the court erred in denying his motion to dismiss all counts alleging Section 656 violations. This Court has held that misapplication under Section 656 includes deceitful, dishonest handling of bank funds which is contrary to bank policy and knowing conduct resulting in injury to the Bank or fraud. United States v. Franklin, 608 F.2d 241, 244 (6th Cir. 1979); United States v. Cooper, 577 F.2d 1079, 1085 (6th Cir.), cert. denied, 439 U.S. 868 (1978). Viewed most favorably to the government, evidence in the record shows Ligon, a Bank officer, knew that Vickers received loan money in violation of Bank policy, personally approved other such loans at Vickers' behest, made several false statements in connection with the loans, and indicated to others his awareness that Vickers' scheme was contrary to Bank policy and FDIC regulations. Thus, the jury could find Ligon aided and abetted Vickers in his efforts to illegally obtain Bank monies by inducing nominal borrowers to obtain loans and by assuring them that they were not liable for repayment. See United States v. Gens, 493 F.2d 216, 222 (1st Cir. 1974). We find no error or abuse of discretion in the court's refusal to grant appellant's motion to dismiss.
 
 
 17
 Ligon also contends insufficient evidence supports his convictions for making false entries in Bank records in violation of 18 U.S.C. Sec. 1005 and making false statements in connection with Bank loans in violation of 18 U.S.C. Sec. 1041. We do not agree. Viewing the evidence and the inferences therefrom most favorably to the government, we conclude the jury could reasonably find the elements of 18 U.S.C. Secs. 1005 and 1014 proven beyond a reasonable doubt. See Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Wolfenbarger, 426 F.2d 992, 994 (6th Cir. 1970).
 
 
 18
 Ligon finally argues that the trial court erred by failing to instruct the jury that:
 
 
 19
 In considering each of the loans involved in this case, you must find that the defendant Charles Ligon knew that the named debtors lacked the ability to repay the loans at the time that the loan was made.
 
 
 20
 We find no error in the court's decision to reject the instruction. Ligon's proposed instruction fails to include the element that nominal borrowers must also understand their responsibility to repay upon default of the ultimate beneficiary before a loan to a third party is precluded from being characterized as a sham or dummy loan. The trial court instructed the jury that:
 
 
 21
 When bank officers or persons connected with the bank in any capacity make a loan to a third party debtor, and the named debtor is both financially capable and fully understands that it is his responsibility to repay, the loan to the third party cannot, absent other circumstances, properly be characterized as a sham or dummy, even if the bank officials know that he will turnover the proceeds to a third party.
 
 
 22
 Unlike the instruction proposed by Ligon, this instruction follows case authority on this issue. See, e.g., United States v. Gallagher, 576 F.2d 1028, 1046 (3d Cir.), cert. denied, 444 U.S. 1040 (1978); United States v. Gens, 493 F.2d 216, 222 (1st Cir. 1974).
 
 
 23
 Accordingly, both convictions and the judgment of the Honorable Robert M. McRae are hereby affirmed.