Engel, Circuit Judge, dissented and filed opinion.

**Roy WILSON, Petitioner-Appellant,**

v.

**Barry MINTZES, Respondent-Appellee.**

**No. 83–1046.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 18, 1984.

Decided May 1, 1985.

Rehearing and Rehearing En Banc Denied June 17, 1985.

John R. Minock (court-appointed), Detroit, Mich., for petitioner-appellant.

Frank J. Kelley, Atty. Gen. of Michigan, J. Peter Lark, Lansing, Mich., for respondent-appellee.

Before ENGEL, MARTIN and CONTIE, Circuit Judges.

CONTIE, Circuit Judge.

On May 4, 1984, we reversed the district court's denial of petitioner Roy Wilson's petition for a writ of habeas corpus and remanded to the district court with instructions that the writ be granted. *Wilson v. Mintzes*, 733 F.2d 424 (6th Cir.1984). The Supreme Court of the United States granted respondent Mintzes' petition for a writ of certiorari, vacated our judgment and remanded the case for consideration in light of *Strickland v. Washington*, 466 U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[1] For the reasons that follow, we reaffirm our earlier judgment.

## I.

Petitioner Wilson contended in seeking a writ of habeas corpus that the trial judge's failure to grant a continuance to allow him to retain substitute counsel when he expressed dissatisfaction with the conduct of his counsel at trial deprived him of his sixth amendment right to counsel. We found that counsel's conduct at trial constituted good cause to warrant substitution of counsel and that Wilson was prejudiced by counsel's attempt to remove himself from the case in front of the jury and by his refusal to cross-examine the officer in charge of the investigation.[2]

---

1. *Mintzes v. Wilson,* —— U.S. ——, 105 S.Ct. 317, 83 L.Ed.2d 255 (1984).

2. For a statement of the facts and procedural history of the case, see our earlier opinion at 733 F.2d 424.

### A.

▮ The sixth amendment to the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

While the plain language of the amendment simply guarantees a defendant "the Assistance of Counsel for his defence," such language encompasses a guarantee of the right to self-representation, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1974), the right of indigents to appointed counsel in felony prosecutions, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); *Birt v. Montgomery*, 725 F.2d 587, 592 (11th Cir.1984) (*en banc*) (sixth amendment right to counsel has four components: right to have counsel, minimum quality of counsel, a reasonable opportunity to select and be represented by chosen counsel, and right to preparation period

sufficient to assure minimum quality counsel); *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir.1978). Additionally, although much sixth amendment jurisprudence has been concerned with the rights of indigent defendants, an accused who desires to and is financially able "should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); *Crooker v. California*, 357 U.S. 433, 439, 78 S.Ct. 1287, 1291, 2 L.Ed.2d 1448 (1958); *Chandler v. Fretag*, 348 U.S. 3, 10, 75 S.Ct. 1, 5, 99 L.Ed. 4 (1954) ("[A] defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth."); *Glasser v. United States*, 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942) ("Glasser wished the benefit of the undivided assistance of counsel of his own choice. We think that such a desire on the part of an accused should be respected."); *Urquhart v. Lockhart*, 726 F.2d 1316, 1319 (8th Cir.1984); *United States v. Burton*, 584 F.2d 485, 488–89 (D.C.Cir. 1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed. 34 (1979) ("An essential element of the Sixth Amendment's protection of the right to the assistance of counsel is that a defendant must be afforded a reasonable opportunity to secure counsel of his own choosing."). [3] *Contra Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir.1982). Therefore, "[w]hen a court unreasonably

---

**3.** *Accord United States v. Ely*, 719 F.2d 902, 904 (7th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1313, 79 L.Ed.2d 710 (1984); *United States v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir. 1982), *cert. denied*, 104 S.Ct. 2154 (1984); *United States v. Cox*, 580 F.2d 317, 321 (8th Cir.1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979); *United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 754 n. 6 (2d Cir.1975); *United States v. Armedo-Sarmiento*, 524 F.2d 591, 592 (2d Cir.1975); *United States v. Blount*, 479 F.2d 650, 652 (6th Cir.1973); *United States v. Wisniewski*, 478 F.2d 274, 285 (2d Cir.1973); *Duke v. United States*, 255 F.2d 721, 724 (9th Cir.), *cert. denied*, 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1364 (1958); *Lee v. United States*, 235 F.2d 219, 221 (D.C.Cir.1956); *United States v. Bergamo*, 154 F.2d 31, 34 (3d Cir.1946); *Raullerson v. Patterson*, 272 F.Supp. 495, 498 (D.Colo. 1967); *United States v. Anonymous*, 215 F.Supp. 111, 114 (E.D.Tenn.1963). Recognition of de-

fendant's right to counsel of his choice developed in cases such as *Glasser* where a defendant objected to multiple representation of co-defendants. "The accused under such circumstances has a special interest in representation by experienced counsel of his own choice in whom he can have the kind of confidence that grows from long-standing acquaintance...." *United States v. Mardian*, 546 F.2d 973, 980 (D.C.Cir.1976) (*en banc*). While the Court has emphatically rejected the notion that an accused has the right to a meaningful attorney-client relationship, *Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617–18, 75 L.Ed.2d 610 (1983), the Court has not indicated that this rejection diminishes the accused's right to effective assistance of counsel, right to conflict-free counsel, or right to counsel of choice. *See generally United States v. Cronic*, — U.S. —, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Strickland, supra*.

denies defendant counsel of choice, the denial can rise to the level of a constitutional violation." *Birt*, 725 F.2d at 592; *United States v. James*, 708 F.2d 40, 44 (2d Cir. 1983). The denial of an accused's right to counsel of his choice "may so offend our concept of the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the Fourteenth Amendment...." *Glasser*, 315 U.S. at 70, 62 S.Ct. at 464.

Likewise, our court has long recognized the accused's right to retain counsel of his choice.[4] *Linton v. Perini*, 656 F.2d 207, 208–09 (6th Cir.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982) (right to counsel of one's choice is guaranteed by due process as well as sixth amendment); *United States v. Phillips*, 699 F.2d 798, 801 (6th Cir.1983), *overruled on other grounds, United States v. Tosh*, 733 F.2d 422 (6th Cir.1984) ("The Sixth Amendment right to counsel includes the right of a defendant in a criminal case to be represented by counsel of his choosing."); *United States v. Reese*, 699 F.2d 803, 805 (6th Cir.1983); *Ross v. Reda*, 510 F.2d 1172, 1173 (6th Cir.), *cert. denied*, 423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975) (right to assistance of counsel "implies a degree of

freedom to be represented by counsel of defendant's choice."). "The right to choose one's own counsel is an essential component of the Sixth Amendment because, were a defendant not provided the opportunity to select his own counsel at his own expense, substantial risk would arise that the basic trust between counsel and client, which is a cornerstone of the adversary system, would be undercut." *Linton*, 656 F.2d at 209.

While recognizing that the accused's right to retain counsel of his choice is necessary to maintaining a vigorous adversary system and the objective fairness of the proceeding in which the accused is prosecuted, *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981), recognition of the right also reflects constitutional protection of the accused's free choice independent of these concerns. *See Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984).[5] Many of the concerns supporting an accused's right to choose to represent himself also support an accused's right to counsel of choice.[6] Conceding that an accused has the right to assistance of counsel at trial as well as the fundamental and

---

4. In *United States v. Johnston*, 318 F.2d 288, 291 (6th Cir.1963) we noted that "[t]he Amendment does not concern itself with who the counsel may be or how the counsel may be selected. But if a defendant in a criminal case desires to hire his own counsel, in order that the object of the Sixth Amendment be met, such defendant must have fair opportunity and reasonable time to employ counsel of his own choosing."

5. An accused's right to counsel of choice, like the right to choose self-representation, is part of an accused's right under the sixth amendment to choose the manner in which he will present his defense. The right is personal to the accused and is protected independent of our concerns regarding the fairness of the proceeding. *Faretta*, 422 U.S. at 834, 95 S.Ct. at 2540. "It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.* (quoting *Illinois v. Allen*, 397 U.S. 337, 350–51, 90 S.Ct. 1057, 1064–65, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring) (footnote omitted)); *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir.

1965), *cert. denied*, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966).

6. Dictating who shall act as counsel for the accused, like dictating that an accused shall be represented by counsel, essentially interposes an organ of the state between an unwilling accused and his right to choose his defense, and violates the logic of the sixth amendment. *Faretta*, 422 U.S. at 820, 95 S.Ct. at 2533. "An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense." *Id.* at 821, 95 S.Ct. at 2534. The court in *Faretta* rested its conclusion that an accused's choice regarding the conduct of his defense is entitled to independent constitutional protection in part on the intent of the drafters.

> But it is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want. The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory

personal nature of that right,[7] it is clear that when an accused is financially able to retain an attorney, the choice of counsel to assist him rests ultimately in his hands and not in the hands of the State.

### B.

■ While an accused's right to choose counsel to assist him at trial is an essential component of the sixth amendment right to assistance of counsel, it is beyond peradventure that such right is not absolute.[8] *Richardson v. Lucas,* 741 F.2d 753, 756 (5th Cir.1984); *Urquhart,* 726 F.2d at 1319; *Birt,* 725 F.2d at 593; *James,* 708 F.2d at 44; *United States v. Silva,* 611 F.2d 78, 79 (5th Cir.1980); *Mardian,* 546 F.2d at 979 n. 9; *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir.1976); *United States v. Ramey,* 559 F.Supp. 60, 62 (E.D. Tenn.1981). When an accused seeks substitution of counsel in mid-trial, he must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution. *United States v. Brown,* 744 F.2d 905, 908

n. 2 (2d Cir.1984); *United States v. Morris,* 714 F.2d 669, 673 (7th Cir.1983); *United States v. Welty,* 674 F.2d 185, 188 (3d Cir. 1982); *McKee v. Harris,* 649 F.2d 927, 931 (2d Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *United States v. Hart,* 557 F.2d 162, 163 (8th Cir.), *cert. denied,* 434 U.S. 906, 98 S.Ct. 305, 54 L.Ed.2d 193 (1977) (to warrant substitution, accused must show justifiable dissatisfaction with counsel). *See generally United States v. Calabro,* 467 F.2d 973, 986 (2d Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973) ("if on discovering justifiable dissatisfaction a court refuses to replace the attorney, the defendant may then properly claim denial of his Sixth Amendment right").

■ Consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.[9] *Linton,* 656 F.2d at 209; *Urquhart,* 726 F.2d at 1319; *Reese,* 699 F.2d at 805 (disqualification order); *Phillips,* 699 F.2d at 801–02; *Burton,* 584 F.2d

---

counsel was utterly foreign to them. And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice.

*Id.* at 833–34, 95 S.Ct. at 2540–41 (footnotes omitted).

7. "Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction." *Faretta,* 422 U.S. at 834, 95 S.Ct. at 2540.

8. Similarly, an accused's right to self-representation is not absolute and unfettered. "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Faretta,* 422 U.S. at 835 n. 46, 95 S.Ct. at 2541 n. 46. "Moreover, the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Id.* at 834, 95 S.Ct. at 2540. *See Brown,* 744 F.2d at 908 (right unqualified only if exercised before commencement of trial); *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir. 1965).

9. "The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a seri-

ous crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense." *Powell,* 287 U.S. at 59, 53 S.Ct. at 60; *Geders v. United States,* 425 U.S. 80, 91, 96 S.Ct. 1330, 1336, 47 L.Ed.2d 592 (1976) ("convenience must occasionally yield to concern for the integrity of the trial itself.") Recently, concerns of finality, administrative convenience and victims' rights have weighed more heavily in the balance.

[I]n the administration of criminal justice, courts may not ignore the concerns of victims. Apart from all other factors, such a course would hardly encourage victims to report violations to the proper authorities; this is especially so when the crime is one calling for public testimony about a humiliating and degrading experience such as was involved here. Precisely what weight should be given to the ordeal of reliving such an experience for the third time need not be decided now; but that factor is not to be ignored by the courts. The spectacle of repeated trials to establish the truth about a single criminal episode inevitably places burdens on the system in terms of witnesses, records, and fading memories, to say nothing of misusing judicial resources.

*Morris,* 461 U.S. at 14–15, 103 S.Ct. at 1617–18.

at 489; *Gandy,* 569 F.2d at 1323; *Giacalone v. Lucas,* 445 F.2d 1238, 1240 (6th Cir.1971), *cert. denied,* 405 U.S. 922, 92 S.Ct. 960, 30 L.Ed.2d 793 (1972). However, "a trial court, acting in the name of calendar control, cannot arbitrarily and unreasonably interfere with a client's right to be represented by the attorney he has selected." *Linton,* 656 F.2d at 209.

Whether a continuance is appropriate in a particular case depends on the facts and circumstances of that case, *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964); *Morris,* 461 U.S. at 11–12, 103 S.Ct. at 1615–16, with the trial judge considering the length of delay, previous continuances, inconvenience to litigants, witnesses, counsel and the court, whether the delay is purposeful or is caused by the accused, the availability of other competent counsel, the complexity of the case, and whether denying the continuance will lead to identifiable prejudice. *Burton,* 584 F.2d at 490–91; *Hudson v. Rushen,* 686 F.2d 826, 829 (9th Cir.1982), *cert. denied,* 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *Gandy,* 569 F.2d at 1324; *Giacalone,* 445 F.2d at 1240; *Ramey,* 559 F.Supp. at 62. Evidence of unreasonable or arbitrary interference with an accused's right to counsel of his choice ordinarily mandates reversal without a showing of prejudice. *Linton,* 656 F.2d at 211–12; *Phillips,* 699 F.2d at 802. Such motions are directed to the sound discretion of the trial judge and will be reversed only for an abuse of discretion. *United States v. Clevenger,* 733 F.2d 1356, 1359 (9th Cir. 1984); *United States v. Wirsing,* 719 F.2d 859, 865 (6th Cir.1983); *Morris,* 714 F.2d at 673; *Welty,* 674 F.2d at 190; *Silva,* 611 F.2d at 79; *United States v. Williams,* 594 F.2d 1258, 1260–61 (9th Cir.1979) (where request made during trial, it was within trial court's discretion to deny request); *Burton,* 584 F.2d at 489; *Gandy,* 569 F.2d at 1322; *United States v. Poulack,* 556 F.2d 83, 86 (1st Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977).[10]

As set forth in our initial disposition of this case, we find that the trial judge, after questioning the competence of

---

**10.** An accused's right to counsel of choice is implicated in motions for disqualification of counsel, *Flanagan,* motions for continuance so that counsel of accused's choice might be present, *Morris v. Slappy,* and motions for substitution of counsel. While Wilson's expressions of dissatisfaction with his counsel, largely engendered by the trial judge, are ambiguous regarding the relief he sought from the court, Wilson's complaints can best be construed as requests for a continuance to seek new counsel. The transcript indicates:

THE COURT: Mr. Wilson, you have heard your attorney indicate that this is his third or fourth criminal trial. You have heard your attorney indicate he has never checked the court record in this case. Are you willing to continue with this lawyer in view of—

MR. PATTERSON: May I ask him something?

THE COURT: Yes, you may ask him something. (Discussion off the record)

DEFENDANT WILSON: No.

THE COURT: You wish to discharge your lawyer as being incompetent?

DEFENDANT WILSON: You asked me did I wish to continue with this attorney and I said no.

THE COURT: Why? State your reasons on the record. He had not prepared the case well?

DEFENDANT WILSON: No he hasn't prepared the case—prepared for the case.

THE COURT: He what?

DEFENDANT WILSON: He hasn't prepared for the case.

THE COURT: Do you have money to hire another lawyer? We have a question of incompetency of Counsel—

DEFENDANT WILSON: My family may—

THE COURT: Is your family here?

DEFENDANT WILSON: Yes.

After Wilson conferred with his family the following exchange took place.

THE COURT: Do you want to continue the trial Mr. Wilson:

MR. PATTERSON: I don't; I move for a mistrial.

THE COURT: The motion is denied.

MR. LA BRET: Mr. Wilson's mother just walked into the courtroom your Honor.

MR. PATTERSON: And I've indicated to my client, who I still represent; I have not been discharged; not to answer anything—nobody's questions.

THE COURT: Bring out the jury; we'll continue the trial.

Apparently, the trial judge construed counsel's indication that he had not been discharged as proof that Wilson wished to retain Patterson as counsel. Such a conclusion is contrary, however, to counsel's subsequent attempt to remove himself as Wilson's counsel.

MR. PATTERSON: I refuse—I'm telling the jury right now, I refuse to conduct this case in

Wilson's counsel and provoking counsel into acts inconsistent with his duty of loyalty to his client, acted unreasonably in failing to heed Wilson's expressions of dissatisfaction.

## II.

In *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the accused, on petition for writ of habeas corpus, claimed that he had been denied effective assistance of counsel as a result of counsel's failure to obtain a psychiatric report and to present character witnesses. Counsel's competence was not questioned at trial and the accused proffered no motions for a continuance to obtain new counsel. In order to obtain relief,

this courtroom after what has been said by the Court to my client while the jury was in the jury box.

THE COURT: Continue the trial, Mr. Patterson.

MR. PATTERSON: I am making no further objections; I remove myself from the case. I remove myself from the case.

THE COURT: Mr. Patterson—

MR. PATTERSON: He doesn't have an attorney.

THE COURT: Mr. Patterson, have a seat.

MR. LA BRET: Your Honor, I've turned the witness over to Mr. Patterson.

THE COURT: Mr. Patterson, do you have any questions of this witness?

MR. PATTERSON: I am no longer this man's attorney. If the Court is going to conduct a trial in this fashion, I am no longer the attorney.

THE COURT: Do you have any questions of this witness?

MR. PATTERSON: Mr. Jamison, Mr. Allen, you can arrest me if he tells you to arrest me, if I walk out this door. I know damn well I can be arrested when I walk out that door.

THE COURT: Are you going to continue the trial?

MR. PATTERSON: No.

THE COURT: Do you have any questions of this witness?

MR. PATTERSON: I move for a mistrial.

THE COURT: Motion denied.

Call the next witness.

MR. LA BRET: I believe that concludes our witnesses, your Honor, for today. We have two or three witnesses who will conclude our portion of the trial.

THE COURT: Ladies and gentlemen of the jury. Return to this courtroom at 9:00 o'clock and we'll continue the trial tomorrow.

At the resumption of trial the next day, the trial judge ignored Wilson's further expressions of dissatisfaction with his counsel.

THE COURT: All right. Are we ready to proceed today?

MR. LA BRET: Yes sir, we are.

THE COURT: And you're satisfied with your lawyer, Mr. Wilson?

MR. PATTERSON: Let me make one last statement. I want to get this in the record—

DEFENDANT WILSON: No. I made a statement that I wasn't satisfied.

THE COURT: You're what?

DEFENDANT WILSON: I am not satisfied with the events that took place yesterday.

THE COURT: You may not be satisfied—I'm trying to protect your rights, Mr. Wilson.

At the heart of this case is the trial judge's failure to acknowledge Wilson's dissatisfaction with counsel. The exchanges cited above indicate that although the prospect of retaining different counsel was raised, such prospect was quashed when the trial judge continued to ignore Wilson's complaints. The dissent argues that the issue in this case is whether Wilson's counsel was ineffective since this was the issue presented to the Michigan Court of Appeals. However, although the issue before the Michigan appellate court was phrased in terms of counsel's competency, the appellate court clearly recognized that at issue was whether the trial judge erred in not allowing Wilson to seek substitute counsel.

The trial court asked the defendant twice if he was satisfied with counsel and both times received a negative answer. In *People v. Wilson, supra,* the Court held that a defendant was entitled to substitution of appointed counsel for "good cause" and where the judicial process would not be disrupted. While counsel in the instant case was retained, no less a standard would seem to apply. Further, *Wilson* also indicated that the application of this substitution standard was left to the discretion of the court.

The appellate court did not speak in terms of ineffectiveness of counsel, nor did it cite Michigan case law, *People v. Garcia,* 398 Mich. 250, 264, 247 N.W.2d 547 (1976) (citing *Beasley v. United States,* 491 F.2d 687 (6th Cir.1974)), which sets out the standards for judging ineffectiveness. It would certainly be curious to adopt a construction of a state court's opinion which ascribes to that court the application of legal standards to which the court makes neither explicit nor implicit reference. In fact, the "good cause" standard for substitution of counsel cited in the passage above is consistent with that enunciated in Part I B of this opinion. These factors, gleaned from our study of the state court opinion, convince us that our analysis of this case pursuant to substitution of counsel cases interpreting the accused's sixth amendment right to choice of counsel is consistent with the trial record and prior dispositions of the case.

an accused must show first that counsel's representation fell below an objective standard of reasonableness, *id.* at 2065, and second, that counsel's performance prejudiced the accused's defense. *Id.* at 2067. Ordinarily, in assessing prejudice "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 2069. However, when counsel labors under a conflict of interest prejudice may be presumed.

> In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests.... Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance."

*Id.* at 2607 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)). For the reasons that follow, we conclude that the standards enunciated in *Strickland* are inapplicable to this case.

### A.

██ Application of the two-prong *Strickland* test to motions for substitution of counsel would require a defendant who cannot communicate with counsel, who is dissatisfied with counsel or whose defense is burdened by a conflict of interest to prove that counsel's conduct rises to the level of constitutional ineffectiveness.[11] We know of no court which has placed such a burden on defendants, and find such a burden incompatible with the principles underlying the right to counsel of choice.[12]

First, while ineffectiveness claims attack the fundamental fairness of the proceeding whose result is challenged, *Strickland,* 104 S.Ct. at 2070, and are concerned with its reliability or objective fairness, *Cronic,* 104 S.Ct. at 2046, the right to counsel of choice "reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Flanagan,* 104 S.Ct. at 1056; *Burton,* 584 F.2d at 489 n. 10 ("[T]he right to choice of counsel is distinct from the right to adequate assistance of counsel. The fact that one is infringed does not indicate one way or the other whether the other is infringed."); *Gandy,* 569 F.2d at 1326. Therefore, the *Strickland* test, which governs situations involving the effectiveness of counsel, should not be applied to cases involving the choice of counsel.

Second, the *Strickland* test is incompatible not only with the nature of the right protected but with the context in which it is asserted. The performance/prejudice inquiry of *Strickland* is tailored to limit the availability of intrusive post-trial inquiry into attorney performance, *Strickland,* 104 S.Ct. at 2066, since ineffectiveness claims inevitably arise subsequent to the proceeding's conclusion. However, in choice of counsel cases, the court is required to adjudicate the accused's rights at a time when the outcome of the proceeding remains in doubt. Therefore, our concern for limiting intrusive post-trial inquiry into attorney performance has little relevance in choice

---

**11.** Wilson has not claimed that, and the parties have not argued whether, counsel was constitutionally ineffective. The trial judge, however, apparently believed that counsel's competency was implicated.

> THE COURT: Now Mr. Wilson, are you prepared to discharge your lawyer? I have a problem. I have been reversed three times for incompetence of Counsel. I don't know how to solve the question. Each one has to be handled on its own merits. I find here a lawyer who is trying his third or fourth capital case, two years of experience; never bothered to check the court file; didn't start his

preparation until yesterday when he asked the Prosecutor for a search warrant.

**12.** We note that in the recent case of *Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), the Supreme Court reviewed a trial court's denial of motions for continuances to obtain counsel of choice and for more preparation time. The court limited its inquiry to whether the trial judge abused his discretion and did not inquire whether counsel's conduct rose to the level of constitutional ineffectiveness.

of counsel cases and does not require application of the *Strickland* standards.[13]

Likewise, the fact that choice of counsel issues are raised at trial demonstrates both the appropriateness of the current standard set out in Part I B above, and the inappropriateness of the *Strickland* test. *Strickland* requires consideration of the totality of the evidence to determine whether counsel's performance was prejudicial. *Strickland*, 104 S.Ct. at 2069. While such an inquiry is possible on review, a trial judge, faced by an accused's assertion of his right to counsel of his choice, would be unable to consider counsel's performance in light of all the evidence and could not thereby determine whether counsel's actions were prejudicial to the extent required to find a constitutional violation pursuant to *Strickland*. On the other hand, the test set out in *Linton, Burton,* and *Welty* entrusts the determination to the discretion of the trial judge and involves a balancing of the accused's rights with public interests in judicial efficiency. This approach allows inquiry into a variety of factors including the time in the proceeding at which the accused seeks new counsel and embodies a flexibility necessary to the variety of contexts in which such requests may arise. Therefore, we find the current approach to requests for substitution of counsel sound and decline to apply *Strickland* to this case.

### B.

We also consider, in light of *Strickland,* whether, to be entitled to relief, an accused must establish that his defense was prejudiced by the trial judge's erroneous denial of his request for substitution.[14]

### (a)

An evaluation of an alleged error in light of the evidence in a case frequently plays a role in disposing of a case under the guise of either a prejudice inquiry as a prerequisite to establishing a constitutional violation, *Strickland,* or in finding an established constitutional error *de minimus* or harmless. *Chapman v. California* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[15] In *Flanagan,* 104 S.Ct. 1051,

---

**13.** Further, the Court has indicated that stricter standards may appropriately be applied to sixth amendment claims not raised at trial. *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718 ("In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.") (footnote omitted).

**14.** The prejudice inquiry in this context, compared with the prejudice inquiry in *Strickland,* differs semantically rather than substantively. If the *Strickland* standard of prejudice were applied, our inquiry would be whether the accused was prejudiced by the actions of counsel, whereas if a prejudice requirement is applied to choice of counsel claims the inquiry is whether the accused was prejudiced by the trial court's denial of his motion for substitution. Both inquiries would likely be determined based on assessments of counsel's conduct.

**15.** The difference in the standards appears to be in the burden of establishing prejudice or harmless error. The harmless error rule requires "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, whereas in a prejudice inquiry "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 104 S.Ct. at 2068. Obviously, constitutional errors such as denial of effective assistance of counsel which require a showing of prejudice as a prerequisite to a finding of error can never be harmless. Although, in light of *Strickland,* we deal primarily with the requirement of prejudice, the Court has recognized that the right to be represented by counsel, like "most constitutional rights, [is] subject to harmless error analysis ... unless the deprivation, by its very nature, cannot be harmless." *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 455 n. 2, 78 L.Ed.2d 267 (1983). *See,* however, *Rushen,* 104 S.Ct. at 461 (Stevens, J., concurring). *See also Moore v. Illinois,* 434 U.S. 220, 232, 98 S.Ct. 458, 466, 54 L.Ed.2d 424 (1977) (use of evidence obtained in derogation of right to counsel is subject to the harmless error rule); *Chambers v. Maroney,* 399 U.S. 42, 54, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970) (no *per se* rule of reversal in late appointment of counsel cases); *Richardson v. Lucas,* 741 F.2d 753, 757 (5th Cir.1984) (validity of waiver of right to counsel subject to harmless error rule). Likewise, the Court has recognized that a showing of prejudice is usually required. "The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of

1056–57 (1984), the Court found it unnecessary to decide whether a defendant asserting denial of the right to counsel of choice must show prejudice to obtain reversal. However, the Court did note that, "to the extent that the asserted right to counsel of one's choice is like, for example, the Sixth Amendment right to represent oneself[,] ... [o]btaining reversal for violation of such a right does not require a showing of prejudice to the defense, since the right reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding." *Id.* In other circumstances, such as a denial of appointment of counsel as required by *Gideon* or denial of counsel's request to be replaced due to conflict of interest, prejudice is presumed. *Id. United States v. Celani*, 748 F.2d 363, 366 (7th Cir.1984).[16] Therefore, although "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt," *Cronic*, 104 S.Ct. at 2047 n. 26, such errors are cognizable without any showing of effect on the outcome of the proceeding when the right asserted is entitled to constitutional protection apart from the objective fairness of the proceeding. The prejudice prong of *Strickland*, therefore, has no applicability to counsel of choice cases since, unlike the right to coun-

sel of choice, "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Cronic*, 104 S.Ct. at 2046.[17]

■ The majority of courts have held that prejudice need not be shown when an accused is denied the right to counsel of his choice.[18] *United States v. Greger*, 657 F.2d 1109, 1113 (9th Cir.1981), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 281 (1983); *Linton*, 656 F.2d at 211–12 (neither prejudice nor harmless error rule applicable); *Slappy v. Morris*, 649 F.2d 718, 722–23 (9th Cir.1981), *rev'd on other grounds*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (prejudice presumed); *Burton*, 584 F.2d at 498; *United States v. Johnston*, 318 F.2d 288, 291 (6th Cir.1963); *Releford v. United States*, 288 F.2d 298, 302 (9th Cir.1961) (prejudice assumed); *Raullerson v. Patterson*, 272 F.Supp. 495, 500 (D.Colo. 1967). *See*, however, *United States v. Lustig*, 555 F.2d 737, 744 (9th Cir.1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978). As noted *supra* at 8, prejudice to the accused is but one factor to be considered by the trial judge and a continuance or substitution may properly be granted in the absence of prejudice and may properly be denied despite its presence. *Burton*, 584 F.2d at 491 n. 19.

counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial." *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 668, 66 L.Ed.2d 564 (1981).

**16.** Likewise, "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error...." *Chapman*, 386 U.S. at 23, 87 S.Ct. at 827 (footnote omitted) (citing *Gideon*, right to counsel as example). *See Linton*, 656 F.2d at 212.

**17.** Since the guarantee of effective assistance of counsel is concerned with the objective fairness of the proceedings, a showing of prejudice may be appropriately required in such cases. *See Morris*, 461 U.S. at 12, 103 S.Ct. at 1616; *Cleven-*

*ger*, 733 F.2d at 1360–61. Cases such as *Morris v. Slappy* in which defendants seek continuances in order to obtain more time for counsel to prepare are premised on the theory that lack of adequate preparation time deprives the accused of the effective assistance of counsel. Since our concern in such cases is with the objective fairness of the proceeding, an inquiry into prejudice suffered by the accused is appropriate in reviewing rulings on such motions, although such inquiry would not be appropriate if the motion sought a change of counsel. *See United States v. Veatch*, 674 F.2d 1217, 1226–27 (9th Cir.1981).

**18.** Justices Brennan and Marshall have concluded that prejudice need not be shown, *Morris*, 461 U.S. at 27–28, 103 S.Ct. at 1624–25, although noting that "it is reasonable to assume that a trial court's arbitrary denial of a continuance produces some prejudice to the defense without requiring a specific showing of prejudice." *Id.* at 28 n. 9, 103 S.Ct. at 1624 n. 9.

We have concluded above that the right to counsel of choice, like the right to self-representation, is premised on respect for the individual and similarly is either respected or denied irrespective of the harmlessness or prejudicial nature of the error. *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 951 n. 8, 79 L.Ed.2d 122 (1984).[19] Requiring an accused to establish that he was prejudiced by a trial judge's denial of his motion for substitution would focus our attention on the result obtained by the substitution rather than on the accused's right to exercise such choice. Therefore, requiring a showing of prejudice would obliterate the heretofore recognized right of the accused to counsel of his choice, would reduce the balancing approach of *Linton* and *Burton* to a parroting of *Strickland,* and would lock the accused into his first selection of counsel unless he can prove conduct rising to the level of constitutional ineffectiveness. Therefore, having determined that the trial court abused its discretion in failing to respect Wilson's complaints regarding counsel, we decline to depart from precedent and will not require that an accused, improperly deprived of counsel of his choice, show prejudice resulting from the trial court's denial thereof.

**(b)**

Application of a prejudice standard would not affect our disposition of this case, since we find that Wilson was prejudiced by the trial court's action.

First, the Court in *Strickland* reaffirmed that "prejudice is presumed when counsel is burdened by an actual conflict of interest." *Strickland,* 104 S.Ct. at 2067. However, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (citing *Cuyler v. Sullivan,* 446 U.S. at 345–50, 100 S.Ct. at 1716–19). While this presumption grew out of multiple representation cases, prejudice has also been presumed when counsel's interests conflict with his client's interests. *Government of the Virgin Islands v. Zepp,* 748 F.2d 125, 139 (3d Cir.1984); *Whiteside v. Scurr,* 744 F.2d 1323, 1330 (8th Cir.1984); *United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984). *See United States v. Barnes,* 662 F.2d 777, 782 n. 8 (D.C.Cir. 1980). Although "[t]his conflict must cause some lapse in representation contrary to the defendant's interests ... such lapse need not rise to the level of actual prejudice." *Sullivan v. Cuyler,* 723 F.2d 1077, 1086 (3d Cir.1983). In our initial disposition of this case, this panel unanimously found that counsel's decision to continue his battle of wits with the trial judge rather than attend to his client's case constituted "an irreconcilable conflict between the interests of defense counsel and petitioner which prejudiced petitioner's case...." *Wilson,* 733 F.2d at 428. As a result of this conflict, counsel stated before the jury that he no longer was Wilson's counsel and he subsequently refused to cross-examine the witness who was on the stand during the initial confrontation between counsel and the trial judge. It is clear that

---

**19.** "The nature of the right to defend pro se renders the traditional harmless error doctrine peculiarly inapposite. Unlike other constitutional rights, the right to represent oneself is not 'result-oriented.' The normal operation of the harmless error doctrine is in cases where the challenged error concerns a right accorded the defendant to facilitate his defense or to insulate him from suspect evidence.... By contrast, we recognize the defendant's right to defend pro se not primarily out of the belief that he thereby stands a better chance of winning his case, but rather out of deference to the axiomatic notion that

each person is ultimately responsible for choosing his own fate, including his position before the law. A defendant has the moral right to stand alone in his hour of trial and to embrace the consequences of that course of action."
*McKaskle,* 104 S.Ct. at 961 n. 6 (White, J. dissenting) (quoting *Chapman v. United States,* 553 F.2d 886, 891 (5th Cir.1977)). *See,* however, *Brown,* 744 F.2d at 908 (prejudice required); *United States v. Malizia,* 437 F.Supp. 952, 955 (S.D.N.Y.1977), *aff'd,* 573 F.2d 1298 (2d Cir. 1978).

counsel's loyalty to his own interests rather than those of his client adversely affected his performance in terms of appearance before the jury as well as his tactical conduct of the case.

■ Second, in *Cronic*, 104 S.Ct. at 2047, the Court has reaffirmed that no specific showing of prejudice is required when an accused is deprived of his sixth amendment right to effective cross-examination. *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974). Prejudice need not be shown since denial of such a right is of such magnitude that "no amount of showing of want of prejudice would cure it." *Smith v. Illinois*, 390 U.S. 129, 131, 88 S.Ct. 748, 749, 19 L.Ed.2d 956 (1968) (quoting *Brookhart v. Janis*, 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966)). If prejudice is presumed when a trial judge denies a defendant the right of cross-examination, reason dictates that such presumption be of equal force when a trial judge unreasonably refuses a defendant's request to remove counsel who flatly refuses to cross-examine a witness because of his running feud with the judge.[20] Therefore, even if a showing of prejudice were a prerequisite to reversal, the conflict of interest between counsel and client along with counsel's flat refusal to cross-examine a witness require a presumption of prejudice in this case.

### III.

We establish no novel right or theory of constitutional law, but rely on tried and true principles as old as the document we expound. The Court has recognized that "Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation...." *Morrison*, 449 U.S. at 364, 101 S.Ct. at 667. The accused has demonstrated that his right to choose the counsel to present his defense was unconstitutionally abridged. There-

fore, having concluded that the trial court's decision was arbitrary and unreasonable, we hold that appropriate respect for Wilson's right of choice can be accorded only by directing the district court to grant the writ.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED to the district court with instructions to grant the writ of habeas corpus.

ENGEL, Circuit Judge, dissenting.

I respectfully dissent.

In our original opinion we stated "the issue presented is whether the petitioner was deprived of effective assistance of counsel when the trial judge denied petitioner's repeated requests for substitute counsel." *Wilson v. Mintzes*, 733 F.2d 424, 425 (6th Cir.1984). When the Supreme Court vacated that judgment and remanded for our consideration in light of *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the majority shifted ground away from the effective assistance issue and moved toward the Sixth Amendment denial of an accused's right to counsel of his choice. The majority now asserts that "Wilson has not claimed that, and the parties have not argued whether, counsel was constitutionally ineffective. The [state] trial judge, however, apparently believed that counsel's competency was implicated." Actually, the issue as presented to the Michigan Court of Appeals was whether the trial court erred in "not granting a mistrial or holding a full hearing on the competency issue." The same issue was stated in Wilson's petition filed in the district court as "whether the trial court erred in failing to hold a full evidentiary hearing on the matter of competency of defense counsel." Wilson's brief to this court reflects a similar shift in emphasis from that in the state court and in his habeas petition in the district court:

---

**20.** While deprivation of his sixth amendment right to effective cross-examination may entitle an accused to a presumption of prejudice, an accused must establish an abuse of discretion

under the standards set out in Part I B above to be entitled to reversal based on denial of his motion for substitution of counsel.

Did the trial court err in failing to make further inquiry when the defendant expressed dissatisfaction with his retained counsel because of counsel's extremely inappropriate behavior during trial and in failing to declare a mistrial so that defendant could obtain counsel of his own choosing?

A careful reading of the record convinces me that the issue presented to us is best analyzed in terms of ineffective assistance of counsel rather than deprivation of the right to counsel. Although both rights are part and parcel of the guarantee of the Sixth Amendment, they address different concerns.

It must be remembered that counsel defending Wilson at the state trial was retained counsel, and until the intemperate outburst of the trial judge questioned counsel's competence, there had not been one suggestion by the defendant of his dissatisfaction with his attorney. The suggestion that Mr. Wilson might want other counsel was initiated by the trial court in a fit of pique when it apparently misunderstood the state of preparation of Mr. Patterson, Wilson's attorney. The trial court took Patterson's statement that he had not examined the court record as meaning that he was not familiar with the court record. It later appeared that the court record had been fully copied by his office and that he had twice carefully examined all parts of that record and those documents so copied even though he had not done so by examining the original documents. It is evident that the trial court was rankled by the reversal of two trials recently held before him on the grounds of incompetence of counsel, and was highly sensitive to any suggestion that defense counsel was not prepared. Defense counsel, Mr. Patterson, was equally rankled by what he considered unjustified accusations and challenges to his competency. This triggered the outburst which has been so thoroughly spread upon the record in the majority opinion, and I certainly share in the observation that the outburst was unseemly, although most of it was out of the hearing of the jury.

It is evident to me, also, that while Mr. Wilson did express himself, after being prodded by the trial judge, as not being satisfied with trial counsel, his dissatisfaction was not so much with Patterson as with the events which had occurred the previous day and his concern about whether he would have a fair trial as a result of it. Thus the following colloquy:

THE COURT: And you're satisfied with your lawyer, Mr. Wilson?

MR. PATTERSON: Let me make one last statement. I want to get this in the record—

DEFENDANT WILSON: No. I made a statement that I wasn't satisfied.

THE COURT: You're what?

DEFENDANT WILSON: I am not satisfied with the events that took place yesterday.

THE COURT: You may not be satisfied—I'm trying to protect your rights, Mr. Wilson. When I found out your lawyer, one, had never read the court file; two—

MR. PATTERSON: Upstairs.

THE COURT: Upstairs, although he may have a complete copy in his office; he probably does have but I'm not sure.

MR. PATTERSON: The Court's calling me a liar?

THE COURT: No, I'm not calling you a liar; I said you have never read the original court file. You made that statement on the record.

MR. PATTERSON: That's right.

THE COURT: And at that time I wanted to bring that to Mr. Wilson's attention because I think the minimum of any lawyer's preparation is to look at the court file.

MR. PATTERSON: And I also indicated on the record yesterday, I had read our file and that I had read our file twice.

THE COURT: All right. This all took place outside the presence of the jury. The jury was not tainted in any way by the statements.

DEFENDANT WILSON: The jury saw what happened, what went on—

THE COURT: The record will show— the jury heard some statements made by your lawyer, not by the Court.

A fair reading of the record would indicate that it was the continuation of the trial itself in view of the circumstances, rather than unhappiness with Mr. Patterson, which evoked Wilson's response. It is significant that when the trial resumed the next day Patterson was still there to represent Wilson. As far as I know, after this final outburst between Mr. Patterson and the trial judge, which was out of the hearing of the jury, the trial settled down. Thereafter, Mr. Patterson is not charged with any dereliction of his duty nor do I find any allegation that he was guilty of any misconduct. As the Michigan Court of Appeals observed, Mr. Wilson was still represented by the same firm at the time the appeal was perfected to the Michigan Court of Appeals.

Other than the outburst recited in the majority opinion, Mr. Patterson's representation of Mr. Wilson throughout the trial was skilled and aggressive and did not evidence any neglect or incompetence. Aside from the one witness whom he refused to cross-examine, Patterson appears to have examined the other government witnesses, to have called some witnesses of his own, and to have made a competent closing argument to the jury. Even at the height of his outbursts, Patterson was careful to move for a mistrial because of the court's perceived misconduct.

The Michigan Court of Appeals carefully considered the precise issue presented to it and now to us—whether the trial court erred in failing to declare a mistrial or to hold a full hearing on the question of the competence of counsel. Because the court's analysis is instructive, I quote it in full:

Defendant next maintains that after the court raised the issue of defense counsel's competency and defendant indicated that he was not satisfied with his lawyer, it erred in not granting a mistrial

or holding a full hearing on the competency issue.

The granting of a mistrial is within the sound discretion of the trial court, *People v. Talaga*, 37 Mich.App. 100, 102, 194 N.W.2d 462 (1971), and the court's discretionary decision will not be set aside unless resulting prejudice to the defendant is demonstrated. A careful reading of this record demonstrates no prejudice to the defendant arising out of the court's refusal to grant a mistrial. The inflammatory exchange between the court and counsel occurred in substantial [sic] was resolved when counsel continued with the trial the following morning.

However, the troublesome issue remains. The trial court asked the defendant twice if he was satisfied with counsel and both times received a negative answer. In *People v. Wilson*, 397 Mich. 76, 243 N.W.2d 257 (1976), the Court held that a defendant was entitled to substitution of appointed counsel for "good cause" and where the judicial process would not be disrupted. While counsel in the instant case was retained, no less a standard would seem to apply. Further, *Wilson* also indicated that the application of this substitution standard was left to the discretion of the court. Here, although the judge raised the competency issue and the defendant indicated his agreement with the court's seeming dissatisfaction with counsel, the following day the trial continued without either the court or defendant pursuing the concerns raised earlier in the proceedings. Thus, it would appear that both the court and the defendant had resolved their doubts in favor of counsel. We have reviewed the record and find that a skillful defense was conducted. It is noted that defendant is still represented by the same firm, proper briefs have been filed for his appeal, and oral argument was exceedingly well presented in the matter.

Considering the lack of demonstrable prejudice to defendant's case by the court's failure to hold a hearing on the issue of competency, we decline to set

aside the jury's decision where there was sufficient evidence to support their findings. We do so acknowledging that the court, in general, was abrasive, but noting that its conduct was not reserved for defendant and his attorney alone.

*People v. Wilson*, No. 77–613, slip op. at 2–3 (Mich.App. Nov. 8, 1978).

In *Beasley v. United States*, 491 F.2d 687 (6th Cir.1974), our court abandoned the "farce and mockery" standard as a meaningful test of the Sixth Amendment right to effective assistance of counsel in favor of the right to "counsel reasonably likely to render and rendering reasonably effective assistance." *Id.* at 696. The court then stated that "[d]efense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations." *Id.* Judge Celebrezze went on to hold that under the facts, petitioner Beasley had not received effective assistance of counsel before and during trial because potentially exonerating defenses were not explored and were not developed. "Because Petitioner was represented by incompetent and ineffective counsel, his conviction cannot stand. Harmless error tests do not apply in regard to the deprivation of a procedural right so fundamental as the effective assistance of counsel." *Id.*

In applying the test of *Beasley* to the present case, the performance of defense counsel during the unseemly outburst did not, in my opinion, conform to *Beasley's* standards. It was true that the record showed Patterson to have been generally competent and in fact to have been prepared for trial, and we are pointed to no defense which was neglected. On the other hand, his conduct during the outburst which extended even to comments in front of the jury, cannot be justified and in my opinion, and that of the rest of the panel, did not conform to that which would be expected of a "lawyer with ordinary training and skill in the criminal law" and who "must conscientiously protect his client's

interest, undeflected by conflicting considerations." Having said as much, however, it is apparent that the remainder of the test in *Beasley* with respect to harmless error, has been considerably modified by *Strickland.* It is at this point where I disagree with the majority, although much of its comment is indeed well taken and is jurisprudentially sound.

The majority seems to analyze the conduct complained of as amounting to the attorney's abandonment, for his own interest, of the interest of his client. Once this is shown, the majority concludes that "[t]he prejudice prong of *Strickland,* therefore, has no applicability to counsel of choice cases since, unlike the right to counsel of choice, 'the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.' [*United States v.* ] *Cronic,* 104 S.Ct. [2039, 2046 (1984) ]"

Because counsel for the defendant was privately retained, because the question of a change of counsel was first suggested not by the defendant but by the court in a fit of pique, and because it is apparent upon the record that the defendant's unhappiness was not with his counsel but with the event itself and particularly with the court's outburst and its effect upon the jury, I believe that this case is best analyzed in terms of ineffective assistance. The outburst of Mr. Patterson was just that—ineffective assistance. The outburst amounted to attorney misconduct. It was not directed in anger at his client; indeed in the course of it, Mr. Patterson was careful to make motion for a mistrial.

The majority found as it did earlier that "[i]t is clear that counsel's loyalty to its own interest rather than those of his client adversely affected his performance in terms of appearance before the jury as well as his tactical conduct of the case." This is true only in the sense that any misconduct of defense counsel would be adverse to his client's best interest. There was no real conflict of interest apparent between the interest of Mr. Patterson and the interest

of Mr. Wilson. He possessed no loyalty to some other client. His ego had simply been bruised by the comments of the trial judge and he responded vehemently. At no time did he suggest that he was disaffected from the interest of his client or that his loyalty was otherwise directed. In fact, after court resumed the following day matters improved considerably.

It seems to me that this aspect of the appeal is very carefully addressed by Justice O'Connor in *Strickland*. After observing that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," 104 S.Ct. at 2067, Justice O'Connor then goes on to discuss the question of presumption of prejudice:

> One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan*, 446 U.S., at 345–350, 90 S.Ct., at 1716–1719, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, *e.g.*, Fed.Rule Crim.Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the *per se* rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan, supra,* 446 U.S., at 350, 348, 90 S.Ct., at 1719, 1718 (footnote omitted).

Conflict of interest claims aside, *actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.* The government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence. Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

104 S.Ct. at 2067 (emphasis added). I, therefore, conclude that *Strickland* requires us to examine the record of the state proceedings in terms of whether the defendant has carried his burden of showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068. So viewing the case, I find myself more in accord with the conclusions of the Michigan Court of Appeals and of Judge Joiner in the District Court. By the time the trial had resumed and additional witnesses had been put on, the court and counsel had considerably cooled down. Mr. Patterson resumed his vigorous cross-examination of the witnesses, and he participated fully and aggressively in the remainder of the trial. There was nothing in the outburst which in fact reflected upon the guilt or innocence of Mr. Wilson. The outburst might even have produced considerable sympathy in the jury for the plight of Mr. Wilson. Certainly nothing the trial judge said was di-

rected to the question of Mr. Wilson's guilt or innocence or even implied his involvement or fault in the fracas. Adequate precautionary instructions were given. The trial judge instructed the jury as follows:

Ladies and gentlemen of the jury, I previously instructed you that the questions that the attorneys ask are not evidence, and the evidence is the answers supplied by the witnesses. Likewise, prior to starting this trial, I told you that an attorney had a duty to make objections, and then it is the duty of the Court to rule on the objections, and I wish to emphasize the conduct of the attorney for the other side should not reflect upon the client.

You should decide this case not on what that attorney asks, what the attorney says, the attorneys' arguments, and questions, but, the case should be decided solely upon the testimony of the witnesses, and the six exhibits that have been admitted into the case, or seven exhibits that have been admitted into this case.

Have any members of the jury been prejudiced or biased because of the conduct, in any way, of the attorneys, during the course of this trial, either one side or the other, anything that the attorneys have done, that would effect your decision?

Would you all reach and decide this case solely upon the evidence, the testimony of the witnesses, not the arguments of the attorneys, and, certainly, the arguments are to direct your attention to the evidence, but the evidence, itself, that is what you are concerned with, and not the arguments.

The defense made on behalf of Mr. Wilson although not successful was a logical one. It was his position that the complaining witness was a prostitute, that Mr. Wilson had purchased her favors, that she had voluntarily dispensed them but became perturbed when Mr. Wilson turned out to be $5.00 short of the specified fee. A competent witness was put on in support of that defense and a good argument was made. Under these circumstances, therefore, I

would conclude that the defendant has not shown nor does the record show a reasonable probability that but for the unprofessional conduct of Mr. Patterson, the result of the proceeding would have been different. Although they did not possess at the time the standards articulated in *Strickland*, the Michigan Court of Appeals and the district court in their opinion clearly reflect substantially the same judgment. I would therefore affirm the judgment of the district court.