NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0964n.06

**No. 11-2451**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 07, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| THOMAS SPIKES, | ) | |
| | ) | |
| Plaintiff – Appellant | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| THOMAS MACKIE, | ) | OPINION |
| | ) | |
| Defendant – Appellee | ) | |

Before:     MERRITT, GIBBONS, and MCKEAGUE, Circuit Judges.

**MCKEAGUE, Circuit Judge**. Thomas Spikes[1] appeals the Eastern District of Michigan's denial of his habeas corpus petition, in which he asserted the following claims: (1) that his no contest plea was involuntary and illusory; (2) that he was denied the effective assistance of trial counsel; (3) that he was erroneously removed from the courtroom during sentencing; (4) that he was denied the right to counsel of his choice; and (5) that he was denied the right to effective assistance of appellate counsel. We affirm.

---

[1] "Thomas Spikes" is an alias. In the related proceeding of the assault case, Spikes was sentenced under the name of "Sylvester North." At oral argument, counsel for Spikes confirmed that Spikes' real name is "Sylvester North." This Court will refer to Spikes by the name under which he was prosecuted in the state of Michigan.

**I.**

In July 2004, Thomas Spikes ("Spikes") was charged with two sets of crimes in Wayne County.[2] In the first case, he faced two counts of Armed Robbery, Felonious Assault, and Felony-Firearm ("the robbery case"). In the second case, Spikes faced charges of two counts of Assault with Intent to Murder, Assault with Intent to do Great Bodily Harm, and Felony-Firearm ("the assault case").

At a September 3, 2004 pretrial hearing, addressing both cases, Spikes rejected a plea offer to resolve all charges in return for concurrent 10 to 20 year sentences. The prosecutor noted at the pretrial that if the cases proceeded to trial, he would ask for "consecutive time" and also notified the trial court that the sentencing guidelines were "much higher than 10 to 20 [years]." R. 6-3, 9-3-04 Pretrial Tr. at 5, PageID # 153. The next pretrial hearing was held on September 24, 2004. The prosecutor mentioned the possibility of a plea agreement in the assault case, but noted that any offer to resolve the assault case would require "at least double digits terms of incarceration, being over 10 years, plus 2 for the firearm." R. 6-4, 9-24-04 Pretrial Tr. at 5, PageID # 161. Spikes, once again, notified the trial court that he was not interested in exploring such a plea bargain.

In October 2004, Spikes was tried in the assault case and found guilty of Assault with Intent to Commit Murder, Assault with Intent to do Great Bodily Harm, and Felony-Firearm. On December 17, 2004, Spikes was sentenced to 22 to 33 years on the Assault with Intent to Murder

---

[2] Counsel for the State clarified in oral argument that any references to Oakland County in the record were improper and the references should have been to Wayne County. This Court corrects for the record the reference to the proper county where Spikes was charged.

conviction, a concurrent five to ten years on Assault with Intent to do Great Bodily Harm conviction, and a consecutive two-year term on the firearm charge.[3]

On February 2, 2005, Spikes once again appeared before the trial court, this time only with respect to the robbery case. The prosecutor informed the court that he had offered Spikes a plea deal. The trial court asked what the sentencing guidelines were, should Spikes go to trial, and the prosecutor responded that they topped out in the 40-year range. The trial court then stated, "[f]orty years on the minimum, all right. And that would be consecutive, perhaps to [the sentences in the assault case]." R. 6-8, 2-2-05 Pretrial Tr. at 3, PageID # 207. On February 7, 2005, the parties returned to the trial court and a plea agreement was finally reached. Spikes entered a no contest plea to two counts of Armed Robbery and one count of Felony Firearm. The prosecutor stated the final terms of his offer to the court:

> If Spikes pleads to two counts of Armed Robbery and Felony Firearm on 04-7361 with a sentence agreement of twenty-six to forty years plus two, to run concurrently with the previous stated term that I've already put on the record [in reference to the assault case], we would dismiss the Felonious Assault count on this file, as well as all charges on 04-7355, which is an accompanying file that he has pending.

*Id.* at 3, PageID # 212.

The prosecutor then stated what the sentencing guidelines would be, should Spikes proceed to trial:

---

[3] A petition for habeas corpus regarding the convictions in the assault case was filed and denied by the Honorable Gerald E. Rosen on July 24, 2012. *Sylvester North v. Mary Berghuis*, U.S.D.C. 2:09-cv-13071, (E.D. Mich. Jul. 24, 2012). Following the district court's ruling, Spikes filed a notice of appeal and a motion for a Certificate of Appealability with this Court. *Sylvester North v. Mary Berghuis*, Case No. 12-2100. This Court denied Spikes' application for a Certificate of Appealability on February 20, 2013. Spikes then filed a motion for leave to file a petition for hearing en banc, which this Court also denied. The assault case was closed on June 24, 2013.

> The guidelines start in the range of the bottom of the guidelines are forty, and the reason they're that high is because Spikes gets OV twenty-five points from the conviction that he already has [the assault case] that he's doing the twenty-two to thirty-three on from the conviction, you know, from the previous conviction.

*Id.* at 4, PageID # 213.

The prosecutor clarified that he would seek consecutive sentences and that the sentencing guidelines range was from a forty-year minimum to a "high end" of sixty. *Id.* at 5, PageID # 214.

The trial court then explained to Spikes the importance of his decision to either accept the plea deal or proceed to trial. *Id.* at 5-6, PageID # 214-15. When the trial court asked Spikes whether he understood, Spikes responded by saying "[s]o, so, you're saying you're giving me time to think--." *Id.* at 6, PageID # 215. The trial court responded:

> No. Time is up, Mr. Spikes. Your family has been here half dozen times in the last two, three weeks. This attorney has been here. I know he has visited you in jail. I know he has spoken with you in the back. I don't know what he has spoken to you about, but no more time. We're going to try this case and we're going to try it very quickly from—not very quickly, but we're going to try it shortly from this date. And the offer is here, and I will not permit a plea on the date of trial. You're going to go for broke.

*Id.*

Following an approximately twenty minute recess, where Spikes spoke with family members and his counsel, defense counsel informed the court that Spikes would accept the plea offer and enter a no contest plea.

Spikes was then placed under oath, and the trial court began the plea colloquy. Spikes indicated that he was twenty-five years old and had obtained an eleventh grade education. He indicated that he was satisfied with his counsel's representation and that he would like to plead no contest. Spikes also indicated that he understood that the statutory maximum penalty for armed

robbery was life in prison and the maximum penalty for felony firearm was two years. The trial

court then stated the exact terms of the plea agreement:

> And just so we're all clear, you're pleading no contest to one count of Armed Robbery. I take that back, two counts of Armed Robbery; one count of Felony Firearm. The People will agree to dismiss the Felonious Assault count on this file and all charges on file number 04-7355, with a sentence agreement of twenty-six to forty years on both Armed Robbery counts, plus two years on the Felony Firearm. These terms are to run concurrently to your terms of twenty-two to thirty years, plus two on 04-7354.

*Id.* at 11, PageID # 220.

Spikes then asked the court whether the plea agreement required him to serve an additional

twenty-six years to the time he was already serving in the assault case. The following discussion

occurred:

> THE COURT: No. They're going to run together, what we call concurrent, all right. So, it's not twenty-two plus twenty-six. While you're doing the twenty-two the twenty-six is running well, as well. All right? Do you understand that?
>
> MR. SPIKES: Can I ask one more question? So, the offer for the robbery was four years, right? Two for the charge and two for the gun?
>
> THE COURT: Do you want to look at it that way, Mr. Trzcinski [the prosecutor]? I mean in the final analysis if you're talking years.
>
> THE PROSECUTOR: Mr. Spikes, the end affect of your plea is you're going to do twenty-eight years that run at the same time as the other twenty-four that you're doing. So, if you want to think of it that you're getting it for four years, that's one way to look at it because you've already got twenty-four in the bank. But you are pleading to twenty-six plus two, which is twenty-eight years. But they run at the same time as your other twenty-four. All right.
>
> MR. SPIKES: See, I thought it was four years. I'm thinking it was just going to be four years, two for the gun and two for the crime. I didn't know it was going to be twenty-six to forty.
>
> DEFENSE COUNSEL: I always advised Mr. Spikes that it would be the time, the minimum time that he's doing plus four more years.

5

> THE COURT: Mr. Spikes, you're doing twenty-six to forty plus the two years on the Felony Firearm for this case. That will run concurrent to the twenty-two plus two that you've already got on the other case. Take it or leave it, sir. I mean I believe and I know it to have been explained to you every which way. We've been here all day. This is probably the sixth, the half dozen time that you've been back here since the first of January. This isn't rocket scientist about this. It's do you want it or do you not want it, yes or no?

> MR. SPIKES: I'm confused, but yeah—

> THE COURT: No, it's not that you're confused. It's your doing twenty-six plus two on the Felony Firearm on this case. That is the plea offer and that is to run concurrent, at the same time as your other case. Is that the plea offer that you are wishing to take advantage of this afternoon? Is that yes?

> MR. SPIKES: Yes.

*Id.* at 12-14, PageID # 221-23.

Following this discussion, Spikes was informed of the rights he was waiving by entering a plea. Spikes stated on the record that he was pleading voluntarily and that no one had threatened or coerced him into pleading. The court then accepted the plea and set the case for a sentencing hearing.

A sentencing hearing was held on March 1, 2005. Defense counsel informed the court that Spikes wanted to withdraw his plea. Counsel indicated that Spikes never understood the ramifications of the plea and that Spikes was going to appeal the sentence in the assault case. Accordingly, assuming Spikes prevailed in his appeal, defense counsel stated that Spikes was under the false understanding that he would only be required to serve four years and not twenty-eight years. Defense counsel requested that the court allow Spikes to withdraw his plea. After hearing argument from the prosecutor, the court denied Spikes' motion, stating:

> Well, pursuant to MCR6.310 and People versus Gomer, the Court does agree with the position of the People in this matter and is not going to permit any withdrawal of the plea.

6

> There was no fraud, duress or coercion. This Court remembers this particular plea in some detail and there was discussion and communication both on the record and off the record between defense counsel, the prosecutor and the family, and that Mr. Spikes certainly was well aware of the implications of the plea in this matter. He had questions, those questions were answered both on the record and this Court is aware that those certain questions were answered off the record, as well. And that as with this sentencing hearing, that [defense counsel] spent a good part of a morning and the record, the docket entries would further reflect that [defense counsel] was back and forth here in this court on this case numerous times communicating with both Mr. Spikes and Mr. Spikes' family. And the Court does, does agree that the plea at the time it was taken was knowingly and understandingly and voluntarily, and is going to deny the request to withdraw the plea.

R. 6-10, 3-1-05 Sentencing Hearing Tr. at 8-9, Page ID # 235-36.

The court then proceeded to ask the parties about their respective positions on the sentencing guidelines scoring. Defense counsel requested additional time to go over the guidelines, which the court granted. After a ten-minute adjournment, defense counsel informed the court that Spikes needed additional time to go over the offense variables. The court denied this request, at which point, Spikes spoke up and informed the court that he was having a "break down and mis-communication" with his counsel and no longer wanted the court-appointed attorney, James Anderson, to represent him. *Id.* at 12, PageID # 239. The following exchange occurred between Spikes and the court:

> MR. SPIKES: Excuse me. I—
>
> THE COURT: Put down your hand, sir. Go ahead.
>
> MR. SPIKES: --I, I don't want this, I don't want this guy, this counsel to represent me no more. We're having a break down and mis-communication—
>
> THE COURT: Mr. Spikes?
>
> MR. SPIKES: --and I do not want this counsel—
>
> THE COURT: Mr. Spikes—

MR. SPIKES: --to represent me.

THE COURT: --I'm going to remove you from the courtroom. You don't want any attorney to represent you. This is about your third time through.

MR. SPIKES: I don't want this guy because we had a break down in communication, and from my understanding the cop that was I was taking was four years. It was not twenty-eight years.

THE COURT: Mr. Ander—

MR. SPIKES: He did not break it down to me and he has not broke it down to me until this day. So—

THE COURT: Well, I don't—

MR. SPIKES: --I would like—Can he step down, please? This is my life right now and I would not have took no cop for no twenty-eight years.

THE COURT: Remove him from the courtroom. We're going to sentence him. Go ahead. Take him out. Mr. Trzcinski, you may proceed.

*Id.* at 12-13, PageID # 239-40.

The court proceeded to go through the scoring of the sentencing guidelines, without Spikes in the courtroom. Defense counsel objected to his client being removed and noted for the record that his client requested additional time to review the offense variables. The court responded by saying:

Mr. Anderson [defense counsel], your client has been asking for more time on each thing we've done for the last six months and he's gotten more time, he's gotten plenty of time. And no personal offense to you, I know you've done an excellent job in this case as the Court has every confidence in you and what you've done. But your client has had every opportunity and really has—wants to continue to delay and we are going to move this case forward.

*Id.* at 14-15, PageID # 241-42.

The court then sentenced Spikes under the terms of the plea agreement, placing on the record a sentence of 26 to 40 years on the armed robbery counts, consecutive with two years for the felony

8

firearm count. The court also dismissed the felonious assault charge. The court ordered the entire sentence to run concurrently with the twenty-two to thirty-three plus two year sentence in the assault case.

Following his plea conviction and sentence, Spikes filed a delayed application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals issued a brief order denying Spikes' application for leave to appeal due to the lack of merit. The Michigan Supreme Court also denied Spikes' appeal in a standard order, stating that it was not convinced that the questions presented should be reviewed by the Michigan Supreme Court.

Following the Michigan Supreme Court's ruling, Spikes returned to the trial court that had sentenced him and filed a motion for relief from judgment.

The trial court addressed each of Spikes' claims individually, and eventually denied the motion stating that Spikes had failed to establish "good cause or prejudice" and denied the motion pursuant to Michigan Civil Rule 6.508(D)(3). Spikes then filed an application for leave to appeal in the Michigan Court of Appeals, which was denied because Defendant had failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). Spikes applied for leave to appeal this decision in the Michigan Supreme Court, but was denied relief under Rule 6.508(D).

Spikes filed a petition for writ of habeas corpus in the Eastern District of Michigan pursuant to 28 U.S.C. § 2254. Spikes raised the following claims for relief:

I.      The trial court erred when it denied Spikes' motion to withdraw plea because it was involuntary and illusory.

II.     Spikes was denied the effective assistance of counsel regarding his plea.

III.    The trial court erred when it ejected Spikes from the courtroom during sentencing, thereby denying him his right to due process.

IV.    Spikes was denied the right to counsel when the trial court forced him to proceed with appointed counsel during sentencing.

V.    Spikes was denied the effective assistance of appellate counsel.

R.1, Petition for Writ of Habeas Corpus at 13, PageID # 13.

The district court issued an opinion and order denying Spikes' request for habeas relief. Reviewing the claims under the deferential standard of the "Antiterrorism and Effective Death Penalty Act of 1996" (AEDPA), the district court found all of Spikes' claims to be without merit. 28 U.S.C. § 2254. This appeal followed.

## II.

Spikes raises five claims in his petition. Michigan asserts that some of Spikes' claims are barred by procedural default. The district court did not address the issue of procedural default, finding the issue of procedural default to be "nettlesome." This Court also need not address procedural default as Spikes' claims fail even on the merits.

### A.    Standard of Review

In a habeas corpus appeal, this Court reviews a district court's legal conclusions *de novo*. If the district court does not make its own findings of fact following an evidentiary hearing, and instead relies on the state trial transcript, the reviewing court must likewise make its own *de novo* review of the record and independently assess the facts in the case. *Haliym v. Mitchell*, 492 F.3d 680, 689 (6th Cir. 2007). Habeas review is generally "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). The standard for reviewing state-court

determinations on habeas is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d). AEDPA imposes a "highly deferential standard for evaluating state-court rulings" and demands that federal courts give state court decisions the benefit of the doubt. *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (citation omitted) (noting that AEDPA creates a substantially higher threshold for obtaining relief than would *de novo* review). Accordingly, when this Court reviews a state court's findings habeas relief is only warranted if the state court's decision was contrary to or involved an unreasonable application of clearly-established federal law or was based upon an unreasonable determination of the facts in light of the evidence. *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006) (citing 28 U.S.C. § 2254(d)). Under AEDPA, a state court decision is considered "contrary to . . . clearly established federal law" if it is "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (quotation marks omitted); *see also Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (citations omitted). For a state court decision to be deemed an "unreasonable application of . . . clearly established Federal law," a state-court decision regarding the merits must be "objectively unreasonable." *Wiggins*, 539 U.S. at 520–21 (citations omitted).

AEDPA deference requires federal courts to preclude federal habeas relief so long as "fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation and internal quotation omitted). The Supreme Court has emphasized that even a "strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citation omitted). Thus, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits." *Id.* at 785 (internal quotation omitted).

## 1.      Involuntary Plea

Spikes argues that his no contest plea was not voluntarily and knowingly entered and sets forth three arguments to support this contention. First, Spikes argues that the prosecutor incorrectly stated the minimum sentencing guidelines, informing Spikes that if he went to trial his minimum sentence would begin at 40 years. Spikes argues that this miscommunication, whether deliberate or not, was misleading, as the low-end of the applicable sentencing guidelines for that offense was actually 18 years, 9 months. Second, Spikes argues that the prosecutor misled him by stating that if he went to trial, the prosecution would seek a sentence consecutive to the sentence in the assault case. Spikes maintains that consecutive sentencing is in contravention of Michigan law. Finally, Spikes concludes that the prosecutor's misrepresentations induced him into accepting a plea bargain that had questionable value.

In order for a guilty plea to be constitutional it must be knowing, intelligent, voluntary, and done with sufficient awareness of the relevant circumstances and likely consequences. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). The identical standard applies to a plea of no contest or nolo contendere. *See Fautenberry v. Mitchell*, 515 F.3d 614, 636–37 (6th Cir. 2008). For a guilty or no contest plea to be voluntary, the defendant must be

> fully aware of the direct consequences, including the actual value of any commitments made
> to him by the court, prosecutor, or his own counsel, [and not] induced by threats   ( o   r

12

> promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature    improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970) (internal quotations and citation omitted). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading. *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994). The voluntariness of a guilty or no contest plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243, 250–51 (6th Cir. 2000). However, where a defendant is "fully aware of the likely consequences" of a plea, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).

A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact and to the judgment itself. *Id.* at 326–27.

After reviewing the state court record, this Court finds that Spikes knowingly and voluntarily entered the no contest plea. First, the trial judge, during the plea colloquy, was satisfied that Spikes was pleading voluntarily and, again, found that Spikes' plea was knowing and voluntary during the motion for relief from judgment. The trial court's factual finding that the plea was voluntary, which is presumptively correct, is further supported by the record. 28 U.S.C. § 2254(e)(1) (providing that state court determination of factual issues are presumed correct unless the habeas petitioner rebuts

the presumption by "clear and convincing evidence"). As the trial court noted in its order denying Spikes' motion for relief from judgment, "defendant was properly apprised of the name of the offenses to which he was pleading and the maximum prison sentence and the mandatory minimum sentence." R. 6-13, Order Denying Mot. for Relief from J. at 38, PageID # 326. A review of the sentencing transcript shows that during the plea colloquy, Spikes was informed, accurately, of the consequences of his plea. When Spikes began to state that he was confused, the trial judge took great care to ensure that Spikes understood the differences between "consecutive" and "concurrent" sentences. The trial court specifically stated:

> THE COURT: No. They're going to run together, what we call concurrent, all right. So, it's not twenty-two plus twenty-six. While you're doing the twenty-two the twenty-six is running well, as well. All right? Do you understand that?
>
> . . .
>
> THE COURT: Mr. Spikes, you're doing twenty-six to forty plus the two years on the Felony Firearm for this case. That will run concurrent to the twenty-two plus two that you've already got on the other case. Take it or leave it, sir. I mean I believe and I know it to have been explained to you every which way. We've been here all day. This is probably the sixth, the half dozen time that you've been back here since the first of January. This isn't rocket scientist about this. It's do you want it or do you not want it, yes or no?
>
> MR. SPIKES: I'm confused, but yeah—
>
> THE COURT: No, it's not that you're confused. It's your doing twenty-six plus two on the Felony Firearm on this case. That is the plea offer and that is to run concurrent, at the same time as your other case. Is that the plea offer that you are wishing to take advantage of this afternoon? Is that yes?

*Id.* at 12-14, PageID # 221-23.

While the transcript from pretrial proceedings shows that the prosecutor misstated[4] the maximum sentence available under the sentencing guidelines for the offense of armed robbery,[5] the trial court expressly clarified the sentence Spikes was going to receive prior to Spikes accepting the plea deal, specifically stating that the statutory maximum sentence Spikes could receive was life in prison. R. 6-9, 2-7-05 Plea Tr. at 10, PageID # 219 (The trial court asked Spikes: "And do you understand that the statutory maximum penalty for Armed Robbery is life in prison. Do you understand that, sir?" Spikes responded with: "Yes."). Spikes contends that the reason he accepted the plea was because he was seeking to avoid a 40-year sentence that would be consecutive to the sentence in his assault case, however Spikes has offered no evidence to the Court, other than his statements of his belief, to support this contention. Pet. Br. at 10.[6] This Court has repeatedly

---

[4] During oral argument, Counsel for Spikes suggested that Spikes had a Constitutional right to not be misled by the prosecutor, regardless of whether the prosecutor intended to mislead the defendant or not. Counsel for Spikes listed a variety of cases for the bases for this Constitutional right. *See, e.g., United States v. Rodriguez*, 533 U.S. 377 (2008); *Hill v. Lockhart*, 474 U.S. 52 (1985); *Maples v. Stegall*, 427 F.3d 1020 (6th Cir. 2005). This Court has reviewed every case Counsel for Spikes raised during oral argument and finds that none of the cases support a finding of such a Constitutional right.

[5] The lower court record shows that at pretrial proceedings, the prosecutor informed Spikes that the sentencing guidelines were forty years (480 months) at the minimum and sixty years (720 months) at the maximum. R. 6-9, 2-7-05 Plea Tr. at 4, PageID # 213. It is unclear how the prosecutor calculated these numbers, and hypothesizing on how he calculated them is inconsequential to this Court's ruling. It is simply worth noting that the prosecutor should have informed Spikes at the pretrial conferences that the range was 225 to 375 months, or life. The prosecutor's initial incorrect statement regarding the potential sentence, however, was later corrected. *Id.* at 13, PageID # 222.

[6] During the plea colloquy, Spikes appeared to think that he was entering a plea involving only a four-year sentence that would run concurrently with his assault-related sentences. R. 6-9, 2-7-05 Plea Tr. at 12-14, PageID # 221-23. However, the trial court made certain to clarify any

rejected claims by habeas petitioners to set aside pleas due to "sentence confusion" where the plea transcript demonstrates that the petitioner states on the record that he is pleading knowingly and voluntarily of his own free will. *Ashbaugh v. Gundy*, 244 Fed. App'x. 715, 717–18 (6th Cir. 2007); *Alford v. Brigano*, 67 Fed. App'x. 282, 285 (6th Cir. 2003). This Court has stated that a court cannot rely on the petitioner's alleged "subjective impression" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process meaningless. *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). If the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite. *Id.* Spikes has failed to provide this Court any evidence to show this Court that he did not understand the bargain he was entering when he entered the no contest plea. *Garcia*, 991 F.2d at 326–28 (holding that a plea-proceeding transcript which suggests that a

---

misconception that Spikes had regarding the length of the additional sentence he would serve should he enter the plea, and also had the prosecutor articulate those consequences. *Id.*; R. 6-13, Order Denying Mot. for Relief from J. at 38, PageID # 326. The district court noted,

> the trial court and the prosecutor clarified that he would not receive a four-year sentence but that the agreed-to sentence would run concurrently with his assault case sentences. Spikes then indicated that he wished to go ahead with the plea. The trial court, therefore, remedied any misconceptions held by Spikes regarding the direct consequences of his plea by clarifying the sentencing consequences of his plea agreement.

R. 8, District Court Op. at 12, PageID # 423.

Therefore, while Spikes contends that he was confused as to the consequences of the plea he was entering, the trial court transcript and the trial court's factual findings clearly show that any misconceptions were clarified by the trial judge and the prosecutor. Spikes has failed to rebut this showing.

plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea). Spikes has thus failed to rebut the strong presumption created by the state court's transcript and this Court finds that the lower court did not make an unreasonable determination of the facts in finding that Spikes understood the plea he was entering.[7]

Spikes' second argument that the plea was "illusory" is also without merit. Because he accepted the plea, Spikes' felonious assault charge was dismissed. The prosecutor also dropped charges in a separate criminal case as part of the plea bargain. *Id.* Additionally, the prosecutor did not seek consecutive sentences, which was an option based on the offenses Spikes was charged. *See* Mich. Comp. Law § 768.7b(2). As Spikes received a bargained-for benefit, he cannot claim that the plea was illusory. *See McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004) (holding that where a

---

[7] Spikes argues that the district court should have granted his request for an evidentiary hearing regarding his motivations for taking the plea. This Court reviews a district court's denial of a request for an evidentiary hearing for abuse of discretion. *Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007) (en banc). A district court abuses its discretion where "it applies the incorrect legal standard, misapplies the correct legal standard, or replies upon clearly erroneous findings of fact." *Id.* (internal quotations omitted). Section 2254(e)(2) sets forth certain preconditions to obtaining an evidentiary hearing in a habeas proceeding, namely that the petitioner must attempt to develop a factual basis of the claim in state court proceedings. If the petitioner fails to develop the factual record, then the court shall not hold an evidentiary hearing unless the petitioner shows that the claim relies on new constitutional law or a factual predicate that could not have been previously discovered. *Id.* The Supreme Court has held that the petitioner must demonstrate diligence, at a minimum, by seeking an evidentiary hearing in state court, in order for a court to consider granting an evidentiary hearing on habeas review. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). This Court finds that the district court did not abuse its discretion in denying Spikes' request for an evidentiary hearing. Spikes showed no attempt to further develop the record in the state court proceedings and did not request an evidentiary hearing when his claim was before Michigan state courts. Accordingly, the district court did not abuse its discretion when it chose to rely on the state court record in reviewing Spikes' claims.

defendant receives the "bargained-for benefit" the plea is not illusory and he is not entitled to habeas relief).

## 2. Ineffective Assistance of Counsel

Spikes asserts that his trial counsel provided ineffective assistance by allowing him to accept the plea bargain without correcting the prosecutor's misrepresentations regarding consecutive sentencing and the applicable sentencing guidelines. Spikes contends that his counsel should have corrected the prosecutor's misstatements about the law and his failure to do so led Spikes to erroneously enter a plea on the basis of avoiding consequences not even applicable to his offense.

To demonstrate ineffective assistance of counsel with respect to a no contest plea, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985) (holding that the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel).

In analyzing the first prong—deficient performance—this Court presumes that counsel is competent and the burden is on the petitioner to demonstrate a constitutional violation. *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)). There is an established deference that is afforded trial counsel in the area of plea bargaining. *Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).

In the context of guilty or no contest pleas, the "prejudice" requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. Stated differently, the defendant must show that there is a reasonable probability that, but for counsel's

errors, he would not have pleaded no contest and would have insisted on going to trial. *Hill*, 474 U.S. at 58–59. Moreover, he must show that there would have been a reasonable chance he would have been acquitted had he gone to trial. *Id.* at 59.

The Supreme Court has noted that "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 778. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when applied together a court should be "doubly" deferent. *Id.* at 788 (internal quotations and citations omitted).

The prosecutor's representations as to the applicable sentencing range and potential sentence Spikes would face if he proceeded to trial were inaccurate and potentially misleading. As the district court noted, trial counsel should have researched the applicable sentencing guidelines and appropriately notified Spikes of the potential sentence should Spikes proceed to trial. However, even if this Court were to find that Spikes' trial counsel's performance was deficient in any respect, Spikes' claim fails on the second prong of *Strickland*. Spikes has not shown that he was "prejudiced" in that he would have foregone the plea bargain but for his counsel's failure to correct the prosecutor's misstatements about the potential sentence. Spikes has not even suggested in his briefs that he would have proceeded to trial if his trial counsel had informed him of the accurate sentencing guidelines. *See Hill*, 474 U.S. at 58–59. Furthermore, as the district court correctly noted, the trial transcript clearly shows that Spikes' main concern was the prospect of facing only an additional four years beyond the sentence that he received in his assault case.

Lastly, Spikes has not presented this Court any evidence or suggestion that had he gone to trial he had a viable defense to the charges. As Spikes has offered no evidence to show that he

would have gone to trial and that he had a viable defense if he proceeded to trial, this Court finds

that the lower court did not unreasonably apply clearly-established federal law.

**3.      Removal from the Courtroom**

Spikes claims that his right to be present at all critical stages of the proceedings was denied

when the trial judge removed him from the courtroom during his sentencing hearing.

A criminal defendant has a right to be physically present at every stage of his trial. *Kentucky*

*v. Stincer*, 482 U.S. 730, 745 (1987). However, a defendant can lose this privilege, "if, after he has

been warned by the judge that he will be removed if he continues his disruptive behavior, he

nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful

of the court that his trial cannot be carried on with him in the courtroom." *Illinois v. Allen*, 397 U.S.

337, 343 (1970). When a court conducts criminal proceedings outside the presence of a defendant,

the lower court's actions are subject to harmless error review. *See United States v. Gallagher*, 57

Fed. App'x. 622, 626–27 (6th Cir. 2003) (holding that a defendant must show that his presence at

a hearing would have been useful to show error in his removal). On habeas review, the test for

harmless error is whether it had a "substantial and injurious effect or influence" on the result of the

proceeding. *Fry v. Pliler*, 551 U.S. 112, 116 (2007).

As noted above, during the sentencing hearing, defense counsel informed the trial court that

he had not had enough time to go over the sentencing guidelines with his client. Spikes then

informed the trial judge that he did not want trial counsel to continue representing him because there

had been a break down in communication and that, from his understanding, the plea he was taking

was four years and not twenty-six years. In response, the trial court ordered Spikes to be removed

from the courtroom. Trial counsel then objected, stating that he was unable to effectively challenge the guideline scoring without Spikes' input. The trial court noted the objection, but then proceeded with the sentencing and sentenced Spikes under the terms of the plea agreement.[8]

On review, the district court found that Spikes should not have been removed from the courtroom, but found the error to be harmless. We agree. Spikes' behavior certainly did not rise to the level of disruption outlined in *Illinois v. Allen*, 397 U.S. 337, 343 (1970). Spikes had barely stated three sentences prior to being ejected from the courtroom. This does not rise to the level of misconduct envisioned in *Illinois v. Allen* to warrant removal from the courtroom.

Nonetheless, this Court finds that the error in removing Spikes from the courtroom in such a quick fashion without cause was harmless. The trial court removed Spikes during his sentencing hearing. At the time of the sentencing, the plea had already been entered and the trial court entered a sentence that conformed to the exact terms to which Spikes pled. Furthermore, Spikes has presented no evidence as to why he was prejudiced by not being in court during his sentencing. Spikes was represented by counsel and his counsel was present during the entire sentencing hearing. While it is true that the trial judge made factual findings on the scoring of offense variables after Spikes was removed from the courtroom, any claim from Spikes regarding this procedure does not

---

[8] The trial court, in reviewing Spikes' Motion for Relief from Judgment, reviewed Spikes' removal under the "plain error" standard. As this Court reviews a defendant's removal from the courtroom under a harmless error standard, the trial court's actions are not subject to AEDPA deference. However, this Court simply notes that the trial court found that no error existed in Spikes' removal from the courtroom.

merit federal habeas relief, because there is no evidence that the outcome of the sentencing would be different had Spikes been present.

**4.      Denial of Counsel of Choice**

Spikes retained attorney Leroy Daggs to represent him in this matter. At some point in the proceedings, Mr. Daggs was hospitalized. The trial court then appointed Robert Plumpe, a colleague of Daggs, to represent Spikes. At a September 24, 2004 pretrial hearing, Plumpe informed the court that Daggs was recently taken to a nursing home and it appeared that he would not be coming back. At that time, Plumpe informed the court that Spikes was attempting to retain another attorney, but that he would stay on as counsel if the attempt failed.

At some point between the September 24, 2004 pretrial hearing and January 10, 2005, another attorney, Rowland Short, was appointed to represent Spikes. On January 10, 2005, the court held a hearing where Mr. Short withdrew as counsel, citing a breakdown in the relationship. The trial court gave Spikes time to attain a new attorney, and notified him that the court would appoint an attorney if he did not obtain one within the given time. Because Spikes did not retain a new attorney within the given time, the court appointed James Anderson, who represented Spikes at a final pretrial hearing, the plea proceeding, and at sentencing.

The Sixth Amendment "guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (internal quotations and citation omitted). However, the right to counsel of choice is not absolute. *Id.* When a criminal defendant's right to be assisted by counsel of one's choice is wrongly

22

denied, it is unnecessary for a reviewing court to conduct a full *Strickland* inquiry to establish a Sixth Amendment violation. *Id.* at 148. "Deprivation of the right [to counsel of choice] is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id.* However, when a criminal defendant's retained counsel becomes unavailable, it does not violate the defendant's right to counsel to require him to proceed with designated counsel. *See United States v. Allen*, 522 F.2d 1229, 1232–33 (6th Cir. 1975). When a trial court considers a defendant's request to substitute counsel in the middle of court proceedings, the court must balance an accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice. *Wilson v. Mintzes*, 733 F.2d 424, 427–28 (6th Cir. 1984), *aff'd on remand*, 761 F.2d 275, 280–81 (6th Cir. 1985) (holding that when a defendant seeks substitution of counsel mid-trial, he must show good cause, such as conflict of interest, a complete breakdown in communication, or an irreconcilable conflict with his attorney to warrant substitution).

The state court did not deny Spikes the right to be represented by the counsel of his choice. Spikes argues that he was denied his counsel of choice (Leroy Daggs) when the trial court appointed him counsel when Mr. Daggs was hospitalized. Spikes claims that "[o]ver [his] objection" he was represented by James Anderson. Pet. Br. at 41. Spikes proceeds to argue that the trial court should have considered his request for a continuance so that Mr. Daggs could have represented him.

The trial court determined, in its order reviewing Spikes' motion for relief from judgment, that it did not err when it denied the motion for adjournment to substitute counsel. The court found that Spikes waited to assert his right to hire different counsel immediately before the sentencing,

after he had been represented by appointed counsel for almost six months. The trial court held that the only prejudice Spikes was asserting was that he was forced to proceed with counsel not of his choosing.

The district court held that the state court did not deny Spikes the right to be represented by counsel of his choice. The district court held that Spikes offered no objection to court appointed counsel at the time the court appointed such counsel. While Spikes may have desired to retain another attorney, the district court stated that there was no indication that he was able to secure his services and therefore the district court ruled that Spikes' claim did not have merit. *Id.*

The Court finds that Spikes was not denied his Sixth Amendment right to counsel of his choosing. Spikes never objected to the court's appointment of counsel, after Mr. Plumpe represented to the trial court that Mr. Daggs was in the hospital. Furthermore, while Spikes notified the trial court of his intention to retain new counsel in January 2005, the trial court warned Spikes that if he was unable to retain new counsel, the court would appoint counsel. Spikes, once again, did not object, when the court appointed James Anderson, after Spikes was unsuccessful in his attempt to retain counsel.

Spikes' claim, at base, is that the trial court erred in not allowing him to proceed with Mr. Daggs as his counsel of choice. However, the fact that Mr. Daggs was seriously ill and unable to represent him does not mean Spikes was denied the right to counsel of choice. As the trial court and district court properly recognized, a defendant's right to counsel of choice is not violated when his retained counsel becomes unavailable and the court requires him to proceed with designated counsel. R. 8, District Court Op. at 19, PageID # 430 (citing *Allen*, 522 F.2d at 1232–33); *see also Morris*

24

*v. Slappy*, 461 U.S. 1, 11–12 (1983) (noting that right to counsel of choice was not violated when the trial court refused to grant a continuance when defendant's counsel of choice was in the hospital). While Spikes was entitled to counsel of his choosing, Spikes was not entitled to unnecessarily delay court proceedings after being given over five months from the date his counsel of choice was first hospitalized to the time of his plea to retain new counsel. The trial court's finding that Spikes was not denied his counsel of choice is not an unreasonable application of federal law, and this Court finds that Spikes' claim that he was denied counsel of choice is without merit.

**5.     Ineffective Assistance of Appellate Counsel**

The standard for effective of assistance of counsel on appeal is the same standard set forth in *Strickland v. Washington. See Beasley v. United States*, 491 F.2d 687, 692–93 (6th Cir. 1974). The failure of an appellate attorney to object or raise an issue can constitute ineffective assistance of counsel if it deprives the defendant of an opportunity for dismissal of the case or for success on appeal. *Willis v. Smith,* 351 F.3d 741, 745 (6th Cir. 2003). To properly review a claim of ineffective assistance of appellate counsel, a court must consider the merits of the issues not raised on direct appeal. *Willis*, 351 F.3d at 745. However, counsel is not deemed ineffective for failing to file all claims of arguable merit; rather, the question remains whether counsel's errors have likely undermined the reliability of, and confidence in, the result. *Hill*, 474 U.S. at 59–60.

As this Court held in *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), to properly review a claim of ineffective assistance of appellate counsel, a court must consider the merits of the issues not raised on direct appeal. This Court, having already determined that the claims, raised and not

raised, by Spikes' appellate counsel were meritless, cannot find Spikes' appellate counsel ineffective.

### III.

The district court's denial of habeas corpus relief is **AFFIRMED**. Spikes has not shown that the state trial court's decision resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d).